## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

1.   **HELEN BRIGGS,**                                        )
                                                             )
     **Individually and as representative**                   )
     **for those similarly situated,**                         )
                                                             )
     **Plaintiff,**                                            )
                                                             )
     **and**                                                   )
                                                             )
2.   **SONYA ALEXANDER, Individually;**                       )
3.   **SERGIO & TERESA ARTEAGA,**                             )
     **Husband and Wife;**                                    )
4.   **MICHAEL ASSIDIO, Individually;**                       )
5.   **BARBARA BAUMANN, Individually;**                       )
6.   **JIMMY & MINDY BEARD,**                                 )
     **Husband and Wife;**                                    )
7.   **BETHESDA OF BLACKWELL,**                               )
     **Individually;**                                        )
8.   **DONALD & MAJORIE BEVINGTON,**                          )
     **Husband and Wife;**                                    )
9.   **DANIEL BOWLING, Individually;**                        )
10.  **EDNA BOWLING, Individually;**                          )
11.  **DAN BRIGGS, Individually;**                            )
12.  **JIM & ROSALIE BRIGGS,**                                )
     **Husband and Wife;**                                    )
13.  **SYLVIA BRYANT, Individually;**                         )
14.  **TERESA CALDWELL, Individually;**                       )
15.  **MELVIN CANAAN, Individually;**                         )
16.  **RUBY CASSADY, Individually;**                          )
17.  **LADONNA COOPER, Individually;**                        )
18.  **CECIL & BEVERLY DAY,**                                 )
     **Husband and Wife;**                                    )
19.  **MARCY DECKER, Individually;**                          )
20.  **CARY DENTON, Individually;**                           )
21.  **MICHAEL DENTON, Individually;**                        )
22.  **JAMES C. DUNN REVOCABLE**                              )
     **LIVING TRUST, Individually;**                          )
23.  **LESTER JR. & VICKI EBERT;**                            )
24.  **RALPH EPPERLY SR., Individually;**                     )
25.  **RALPH EPPERLY JR., Individually;**                     )

| | | |
|---|---|---|
| 26. | RICHARD GATES, Individually; | ) |
| 27. | CHRISTOPHER & JAMIE GLASS, | ) |
| | Husband and Wife; | ) |
| 28. | JACOB GLASS, Individually; | ) |
| 29. | KENNETH & MICHELLE GLASS, | ) |
| | Husband and Wife; | ) |
| 30. | PAMELA GOOCHEY, Individually; | ) |
| 31. | CECIL & ELSA GREENFIELD, | ) |
| | Husband and Wife; | ) |
| 32. | EDWARD & PHYLLIS GREGORY, | ) |
| | Husband and Wife; | ) |
| 33. | RONALD & ANNONA HALL, | ) |
| | Husband and Wife; | ) |
| 34. | ALFREDO C. HANDY & | ) |
| | HAZEL J. HANDY REVOCABLE | ) |
| | LIVING TRUST, Individually; | ) |
| 35. | GARY & ELLA HASKINS, | ) |
| | Husband and Wife; | ) |
| 36. | LINDA HEILIG, Individually; | ) |
| 37. | BARBARA HERR, Individually; | ) |
| 38. | DEBORAH HETRICK, Individually; | ) |
| 39. | MEILISSA JENKINS, Individually; | ) |
| 40. | KIMBERLY JERNIGAN, Individually; | ) |
| 41. | JAMES LANTZ, Individually; | ) |
| 42. | TERRY & SHERRI LITTLEFIELD, | ) |
| | Husband and Wife; | ) |
| 43. | JAMES & GLENNIS LIVELY, | ) |
| | Husband and Wife; | ) |
| 44. | JESSE LIVELY, Individually; | ) |
| 45. | RHONDA LOVEALL, Individually; | ) |
| 46. | DORWIN LUMLY, Individually; | ) |
| 47. | CORY & THERESA MARSHALL, | ) |
| | Husband and Wife; | ) |
| 48. | PEGGY MASSEY, Individually; | ) |
| 49. | DOUGLAS & TWILA MCCLEARY, | ) |
| | Husband and Wife; | ) |
| 50. | SUSAN McEARCHERN, Individually; | ) |
| 51. | LAQUITA MILLER, Individually; | ) |
| 52. | MONTE & JOYCE MOORE, | ) |
| | Husband and Wife; | ) |
| 53. | RANDY NEWMAN, Individually; | ) |
| 54. | JOHN & CATHERINE NORTH, | ) |
| | Husband and Wife; | ) |

55.  JOHNNIE & CHERYL PAIGE,            )
     Husband and Wife;                  )
56.  BO PANNELL, Individually;          )
57.  CHRISTIAN & JACKIE PANNELL,        )
     Husband and Wife;                  )
58.  JOBY & LINDA PARR,                 )
     Husband and Wife;                  )
59.  DERICK PAYNE, Individually;        )
60.  KAREN ROBERTS, Individually;       )
61.  ALEXANDER & DIANIA ROBLES,         )
     Husband and Wife;                  )
62.  DIAN SABIN, Individually;          )
63.  LEONARD SABIN, Individually;       )
64.  PERSHAWNIA SCRIMSHER               )
     -ATCHLEY, Individually;            )
65.  LAWRENCE & JULIA SELF,             )
     Husband and Wife;                  )
66.  DELBERT SHIRLEY, Individually;     )
67.  DARL & JEWEL SHOPE,                )
     Husband and Wife;                  )
68.  SAM & DOLORES SHOREY,              )
     Husband and Wife;                  )
69.  JAMES & LEXIA SMITH,               )
     Husband and Wife;                  )
70.  KEITH & MARIE SNOW,                )
     Husband and Wife;                  )
71.  RUSSELL & DENISE SODOWSKY,         )
     Husband and Wife;                  )
72.  KEYRA SOTO, Individually;          )
73.  DONALD & KATHLEEN SPENCE,          )
     Husband and Wife;                  )
74.  RONALD AND SHERRY SPRACKLIN,       )
     Husband and Wife;                  )
75.  BECKY STEVENS, Individually;       )
76.  GEORGE & TERESA STOUT,             )
     Husband and Wife;                  )
77.  CECIL & PATRICIA STUEVER,          )
     Husband and Wife;                  )
78.  SEAN & MELODY SULLIVAN,            )
     Husband and Wife;                  )
79.  MELVIN TANNEHILL, Individually;    )
80.  CHARLES & MARY TATE,               )
     Husband and Wife;                  )

| | | |
|---|---|---|
| 81. | WALLACE TATTERSHALL & VICKY THELE, Husband and Wife; | ) ) |
| 82. | DAWN THELE, Individually; | ) |
| 83. | WARREN WARD, Individually; | ) |
| 84. | JERRY WEBBER, Individually; | ) |
| 85. | JENNIFER WEEDEN, Individually; | ) |
| 86. | RACHEL WEEDEN-KIRK, Individually; | ) |
| 87. | REBEKAH WEEDEN-WIMER, Individually; | ) ) |
| 88. | VIRGINIA WELCH, Individually; | ) |
| 89. | JOHN & DIANE WEST, Husband and Wife; | ) ) |
| 90. | DARLENE WIELAND, Individually; | ) |
| 91. | KATHY WILLIAMSON, Individually; | ) |
| 92. | MARION WILLIAMSON, Individually; | ) |
| 93. | JAMES & CAROLYN WILSON, Husband and Wife; | ) ) |
| 94. | PEGGY WOOD, Individually; | ) |
| 95. | BARBARA JEAN WYNN, Individually; | ) |
| 96. | DARIN & CINDY WYNN, Husband and Wife; | ) ) |
| 97. | ELMER & THURRA WYNN, Husband and Wife; | ) ) |
| 98. | JACK & MELINDA WYNN, Husband and Wife; | ) ) |
| 99. | JARED WYNN, Individually; | ) |
| 100. | MIKE WYNN, Individually; and | ) |
| 101. | GLENN & TERRY YOUNG, Husband and Wife; | ) ) |
| | | ) |
| | Individually, | ) ) |
| | Plaintiffs, | ) Case No. CIV-13-1157-M |
| | | ) |
| v. | | ) CLASS ACTION |
| | | ) |
| 1. | FREEPORT-MCMORAN COPPER & GOLD INC.; | ) ) |
| 2. | FREEPORT-MCMORAN CORPORATION f/k/a PHELPS DODGE CORPORATION; | ) ) ) |
| 3. | CYPRUS AMAX MINERALS COMPANY; and | ) ) |

4.    **BLACKWELL ZINC COMPANY, INC.**      )
                                            )
      **Defendants.**                       )

## PLAINTIFFS' COMPLAINT

COME NOW Plaintiffs, Helen Briggs, Sonya Alexander, Sergio & Teresa Arteaga, Michael Assidio, Barbara Baumann, Jimmy & Mindy Beard, Bethesda of Blackwell, Donald & Majorie Bevington, Daniel Bowling, Edna Bowling, Dan Briggs, Jim & Rosalie Briggs, Sylvia Bryant, Teresa Caldwell, Melvin Canaan, Ruby Cassady, LaDonna Cooper, Cecil & Beverly Day, Marcy Decker, Cary Denton, Michael Denton, James C. Dunn Revocable Living Trust, Lester Jr. & Vicki Ebert, Ralph Epperly Sr., Ralph Epperly Jr., Richard Gates, Christopher & Jamie Glass, Jacob Glass, Kenneth & Michelle Glass, Pamela Goochey, Cecil & Elsa Greenfield, Edward & Phyllis Gregory, Ronald & Annona Hall, Alfredo C. Handy & Hazel J. Handy Revocable Living Trust, Gary & Ella Haskins, Linda Heilig, Barbara Herr, Deborah Hetrick, Meilissa Jenkins, Kimberly Jernigan, James Lantz, Terry & Sherri Littlefield, James & Glennis Lively, Jesse Lively, Rhonda Loveall, Dorwin Lumly, Cory & Theresa Marshall, Peggy Massey, Douglas & Twila McCleary, Susan McEarchern, Laquita Miller, Monte & Joyce Moore, Randy Newman, John & Catherine North, Johnnie & Cheryl Paige, Bo Pannell, Christian & Jackie Pannell, Joby & Linda Parr, Derick Payne, Karen Roberts, Alexander & Diania Robles, Dian Sabin, Leonard Sabin, Pershawnia Scrimsher-Atchley, Lawrence & Julia Self, Delbert Shirley, Darl & Jewel Shope, Sam & Dolores Shorey, James & Lexia Smith, Keith & Marie Snow, Russell & Denise Sodowsky, Keyra Soto, Donald & Kathleen Spence, Ronald & Sherry Spracklin, Becky Stevens, George & Teresa Stout,

Cecil & Patricia Stuever, Sean & Melody Sullivan, Melvin Tannehill, Charles & Mary Tate, Wallace Tattershall & Vicky Thele, Dawn Thele, Warren Ward, Jerry Webber, Jennifer Weeden, Rachel Weeden-Kirk, Rebekah Weeden-Wimer, Virginia Welch, John & Diane West, Darlene Wieland, Kathy Williamson, Marion Williamson, James & Carolyn Wilson, Peggy Wood, Barbara Wynn, Darin & Cindy Wynn, Elmer & Thurra Wynn, Jack & Melinda Wynn, Jared Wynn, Mike Wynn, and Glenn & Terry Young, individually and on behalf of all others similarly situated (herein collectively "Plaintiffs"), for their claim for relief against Defendants Freeport-McMoRan Copper & Gold Inc., independently and as successor-in-interest to Freeport-McMoRan Corporation f/k/a Phelps Dodge Corporation; Freeport-McMoRan Corporation f/k/a Phelps Dodge Corporation, independently and as successor-in-interest to Cyprus Amax Minerals Company; Cyprus Amax Minerals Company, independently and as successor-in-interest to Blackwell Zinc Company, Inc.; and Blackwell Zinc Company, Inc., independently; (herein collectively "Defendants") and allege and state as follows:

## NATURE OF THE ACTION

1.      For nearly 60 years, Defendants profited from the production of millions of tons of zinc and cadmium at the Blackwell Zinc Smelter (herein the "Smelter") near the City of Blackwell, Oklahoma.  Toxic materials contained within the dust, smoke, and other releases from the Smelter have been and continue to contaminate land in the nearby City of Blackwell, Oklahoma, including land owned by Plaintiffs.

2.      When faced with increasing environmental regulation, Defendants' chose to shut down the Smelter rather than pay for the cost of updating their facility with new

equipment.  Most distressingly, pervasive and widespread contamination caused by the Smelter continues to burden the citizens of Blackwell, Oklahoma, including Plaintiffs, with the ongoing environmental problems caused by Defendants' Smelter.

3.    Plaintiffs are landowners near the vicinity of the Smelter, and in areas known or believed to be contaminated by Defendants' toxic smelter waste and effluent.

4.    Plaintiffs bring this lawsuit as representatives for all landowners in and around the former Smelter, where soils, surface water, and groundwater have been polluted, where property values have been reduced, and where beneficial uses of property have been interfered with by Defendants' lack of control and containment of toxic materials from the Smelter.

5.    Plaintiffs bring this suit to address three main issues: (1) compensation for the past, present and future continuing trespass of pollutants, and nuisances associated therewith, from the past, present, and future continuing release of Defendants' toxic smelter waste and effluent into the soil, surface water, and groundwater under property owned by Plaintiffs and other similarly situated persons' lands and natural environment; (2) abatement of contaminated soil, surface water, and groundwater under property owned by Plaintiffs and other similarly situated persons' lands and natural environment; and (3) punitive damages against Defendants for their reckless, intentional, and malicious disregard of Plaintiffs' property interests.

6.    Various theories of liability are plead, *inter alia*, claims for trespass, nuisance, negligence, unjust enrichment, and actual damages in connection with Defendants' pollution of Plaintiffs' lands and the natural environment from the Smelter.

This case is brought on behalf of all named persons as a class action on behalf of all similarly situated persons seeking the abatement and compensation for trespass and nuisances to class members' lands.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  Specifically, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), which expressly grants original jurisdiction over civil actions in which the amount in controversy exceeds $5,000,000.00 and any class member is a citizen of a State different from any defendant.

8.     The Local Controversy Exception to the Class Action Fairness Act (herein "CAFA") is inapplicable in this case because no defendant from whom significant relief is sought is a citizen of Oklahoma.  *See* 28 U.S.C. § 1332(d)(4)(A)(i).

9.     Venue lies in this District pursuant to 28 U.S.C. § 1391 (b)(2), which states that a civil action may be brought in any judicial district in which a substantial part of the events occurred or where a substantial party of the property is situated.

## PARTIES

10.     Plaintiff Helen Briggs is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself and others similarly situated.

11.     Plaintiff Sonya Alexander is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

12.     Plaintiffs Sergio & Teresa Arteaga are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

13.     Plaintiff Michael Assidio is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

14.     Plaintiff Barbara Baumann is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

15.     Plaintiffs Jimmy & Mindy Beard are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

16.     Plaintiff Bethesda of Blackwell owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of itself.

17.     Plaintiffs Donald & Majorie Bevington are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

18.     Plaintiff Daniel Bowling is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

19.     Plaintiff Edna Bowling is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

20.     Plaintiffs Dan Briggs is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

21.     Plaintiffs Jim & Rosalie Briggs are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

22.     Plaintiff Sylvia Bryant is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

23.     Plaintiff Teresa Caldwell is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

24.     Plaintiff Melvin Canaan is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

25.     Plaintiff Ruby Cassady is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

26.     Plaintiff LaDonna Cooper is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

27.     Plaintiffs Cecil & Beverly Day are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

28.     Plaintiff Marcy Decker is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

29.     Plaintiff Cary Denton is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

30.     Plaintiff Michael Denton is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

31.     Plaintiff James C. Dunn Revocable Living Trust owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of itself.

32.     Plaintiffs Lester Jr. & Vicki Ebert are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

33.     Plaintiff Ralph Epperly Sr. is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

34.     Plaintiff Ralph Epperly Jr. is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

35.     Plaintiff Richard Gates is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

36.     Plaintiffs Christopher & Jamie Glass are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

37.     Plaintiff Jacob Glass is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

38.     Plaintiffs Kenneth & Michelle Glass are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

39.     Plaintiff Pamela Goochey is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

40.    Plaintiffs Cecil & Elsa Greenfield are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

41.    Plaintiffs Edward & Phyllis Gregory are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

42.    Plaintiffs Ronald & Annona Hall are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

43.    Plaintiff Alfredo C. Handy & Hazel J. Handy Revocable Living Trust owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of itself.

44.    Plaintiffs Gary & Ella Haskins are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

45.    Plaintiff Linda Heilig is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

46.    Plaintiff Barbara Herr is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

47.     Plaintiff Deborah Hetrick is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

48.     Plaintiff Meilissa Jenkins is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

49.     Plaintiff Kimberly Jernigan is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

50.     Plaintiff James Lantz is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

51.     Plaintiffs Terry & Sherri Littlefield are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

52.     Plaintiffs James & Glennis Lively are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

53.     Plaintiff Jesse Lively is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

54.     Plaintiff Rhonda Loveall is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

55.     Plaintiff Dorwin Lumly is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

56.     Plaintiffs Corey & Theresa Marshall are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

57.     Plaintiff Peggy Massey is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

58.     Plaintiffs Douglas & Twila McCleary are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

59.     Plaintiff Susan McEarchern is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

60.     Plaintiff Laquita Miller is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

61.    Plaintiffs Monte & Joyce Moore are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

62.    Plaintiff Randy Newman is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

63.    Plaintiffs John & Catherine North are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

64.    Plaintiffs Johnnie & Cheryl Paige are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

65.    Plaintiff Bo Pannell is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

66.    Plaintiffs Christian & Jackie Pannell are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

67.    Plaintiffs Joby & Linda Parr are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

68.     Plaintiff Derick Payne is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

69.     Plaintiff Karen Roberts is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

70.     Plaintiffs Alexander & Diania Robles are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

71.     Plaintiff Dian Sabin is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

72.     Plaintiff Leonard Sabin is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

73.     Plaintiff Pershawnia Scrimsher-Atchley is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

74.     Plaintiffs Lawrence & Julia Self are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

75.     Plaintiff Delbert Shirley is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

76.     Plaintiffs Darl & Jewel Shope are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

77.     Plaintiffs Sam & Dolores Shorey are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

78.     Plaintiffs James & Lexia Smith are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

79.     Plaintiffs Keith & Marie Snow are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

80.     Plaintiffs Russell & Denise Sodowsky are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

81.     Plaintiff Keyra Soto is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

82.     Plaintiffs Donald & Kathleen Spence are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

83.     Plaintiffs Ronald and Sherry Spracklin are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

84.     Plaintiff Becky Stevens is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

85.     Plaintiffs George & Teresa Stout are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

86.     Plaintiffs Cecil & Patricia Stuever are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

87.     Plaintiffs Sean & Melody Sullivan are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

88.     Plaintiff Melvin Tannehill is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

89.     Plaintiffs Charles & Mary Tate are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

90.     Plaintiff Wallace Tattershall & Vicky Thele are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

91.     Plaintiff Dawn Thele is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

92.     Plaintiff Warren Ward is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

93.     Plaintiff Jerry Webber is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

94.     Plaintiff Jennifer Weeden is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

95.     Plaintiff Rachel Weeden-Kirk is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

96.     Plaintiff Rebekah Weeden-Wimer is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

97.     Plaintiff Virginia Welch is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

98.     Plaintiffs John & Diane West are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

99.     Plaintiff Darlene Wieland is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

100.    Plaintiff Kathy Williamson is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

101.    Plaintiff Marion Williamson is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

102.    Plaintiffs James & Carolyn Wilson are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

103.    Plaintiff Peggy Wood is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

104.    Plaintiff Barbara Jean Wynn is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of herself.

105.    Plaintiffs Darin & Cindy Wynn are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

106.    Plaintiffs Elmer & Thurra Wynn are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

107.    Plaintiffs Jack & Melinda Wynn are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

108.    Plaintiff Jared Wynn is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

109.    Plaintiff Mike Wynn is a natural person who resides and owns property in the City of Blackwell, Kay County, Oklahoma and brings this lawsuit on behalf of himself.

110.    Plaintiffs Glenn & Terry Young are natural persons who reside and own property in the City of Blackwell, Kay County, Oklahoma and bring this lawsuit on behalf of themselves.

111.    Defendant Freeport-McMoRan Copper & Gold Inc. (herein "Freeport-McMoRan"), independently and as alter ego of Defendant Blackwell Zinc Company, is authorized to do business in Oklahoma and may be served with process by serving its registered agent, the Oklahoma Secretary of State, at 2300 North Lincoln Boulevard, Room 101, Oklahoma City, Oklahoma 73105-4897.  Defendant Freeport-McMoRan was organized under the laws of the State of Delaware; its principal office is located at One North Central Avenue, Phoenix, Arizona, 85004.   Defendant Freeport-McMoRan acquired Defendant Freeport-McMoRan Corporation (formerly Phelps Dodge Corporation) in March 2007, at which time Defendant Freeport-McMoRan Corporation became a wholly owned subsidiary of Defendant Freeport-McMoRan.   Since the acquisition of Defendant Freeport-McMoRan Corporation, Defendant Freeport-McMoRan actively performs, directs to be performed, or causes to be performed, individually and through its corporate affiliates/subsidiaries, all obligations of Defendant Blackwell Zinc Company, Inc. related to the Smelter and, through its actions, accepts responsibility for all cleanup, remediation, and liabilities associated with the historic operation of the Smelter.

112.   Defendant Freeport-McMoRan Corporation, f/k/a Phelps Dodge Corporation (herein "Defendant FMC"), independently and as alter ego of Defendant Blackwell Zinc Company, may be served with process by serving its registered agent, CT

Corporation System, at 111 Eighth Avenue, New York, New York, 10011.  Defendant

FMC was organized under the laws of the State of New York; its principal office is

located at One North Central Avenue, Phoenix, Arizona, 85004.  Defendant FMC

acquired Defendant Cyprus Amax Minerals Company in 1999 as a wholly owned

subsidiary.  Since the acquisition of Defendant Cyprus Amax Minerals Company,

Defendant FMC actively performs, directs to be performed, or causes to be performed,

individually and through its corporate affiliates/subsidiaries, all obligations of Defendant

Blackwell Zinc Company, Inc., related to the Smelter and, through its actions, is

responsible for all cleanup, remediation, and liabilities associated with the operation of

the Smelter, other related actions, including the operation of a cadmium plant, and related

disposition of the waste from the Smelter.

113.   Defendant Cyprus Amax Minerals Company (herein "Cyprus Amax"),

independently and as alter ego to Defendant Blackwell Zinc Company may be served

with process by serving its registered agent, CT Corporation System, at 2394 East

Camelback Road, Phoenix, Arizona, 85016.  Defendant Cyprus Amax was organized

under the laws of the State of Delaware; its principal office is located at One North

Central Avenue, Phoenix, Arizona, 85004.  Defendant Cyprus Amax was created by the

1993 merger of Cyprus Minerals Company with Amax, Inc.  Defendant Blackwell Zinc

Company, Inc. was a wholly owned subsidiary of Amax, Inc, f/k/a American Metal

Climax, Inc., f/k/a The American Metal Company, although Amax, Inc. no longer exists

as a result of the merger.  Since the merger, Defendant Cyprus Amax actively performs,

directs to be performed, or causes to be performed, individually and through its corporate

affiliates/subsidiaries, all obligations of Defendant Blackwell Zinc Company, Inc., related to the Smelter and, through its actions, accepts responsibility for all cleanup, remediation, and liabilities associated with the historic operation of the Smelter.

114.    Defendant Blackwell Zinc Company, Inc. (herein "BZC"), organized under the laws of the State of New York, is a wholly owned subsidiary of Defendant Cyprus Amax, which is a wholly owned subsidiary of Defendant FMC (formerly Phelps Dodge Corporation), which is a wholly owned subsidiary of Defendant Freeport-McMoRan. Defendant Blackwell Zinc Company is authorized to conduct business in the State of Oklahoma and may be served with process by serving its registered agent, the Corporation Service Company, 115 S.W. 89th Street, Oklahoma City, Oklahoma 73139.

115.    Defendants, jointly and severally, as agents for one another, and/or as alter egos of one another, are responsible for the pollution, obligations, cleanup, and liabilities resulting from the Smelter and the disposal of waste or the emission of effluents either from the Smelter, itself, or from the places where waste from the Smelter was disposed.

116.    As a result of Defendants' illegal and/or unjust conduct, Plaintiffs seek actual damages for Defendants' torts, equitable relief, costs, and expenses of litigation, including attorneys' fees, punitive damages, and all other relief available.  Plaintiffs' claims include claims for the continuing pollution of their real properties.  Defendants are jointly and severally liable to Plaintiffs.

## **BACKGROUND**

117.    Defendants, in reckless disregard for the rights of Plaintiffs and all class members, created, sustained, and covered-up ongoing pollution and contamination in and

around the City of Blackwell, Kay County, Oklahoma.  The pollution emanated from or was disposed from Defendants' Blackwell Smelter, which began spreading pollution in 1916 and continues to contaminate Plaintiffs' properties even today.

118.    The Blackwell Zinc Smelter (herein "Smelter") began operation in 1916 on approximately 160 acres near the City of Blackwell, Kay County, Oklahoma.  Defendants own and operate the Smelter.  In addition to producing approximately ten (10) billion pounds of zinc alloy, Defendants also opened a cadmium plant at the Smelter site in 1957, which produced millions of tons of cadmium.  At one point in time, the Smelter was the largest horizontal retort smelter in the world.

119.    Smelters, including the Blackwell Zinc Smelter, can cause air-polluting emissions.  The Smelter was operated by Defendants with no emission controls.  Vast quantities of pollutants have been and continue to be released from the Smelter into the environment in various forms, including fugitive dust.  The pollutants, including the dust released from the Smelter, interferes with Plaintiffs' ability to use their properties.

120.    Defendants admit that zinc ore concentrates, usually containing some level of lead and/or cadmium, were piled on and around the Smelter site.  These concentrates and residues contained considerable amounts of arsenic, lead, cadmium, zinc, and other heavy metals.  Defendants' holding areas and slag ponds were unlined and, as a result, heavy metals, such as zinc, lead, arsenic, and cadmium, contaminated the soils and leached into the groundwater.  Defendants admit the soil and/or shallow groundwater in certain areas of the City of Blackwell contains levels of zinc, arsenic, lead, and/or cadmium above naturally occurring background levels that were caused by emissions

from the Smelter and related facilities.  Indeed, Defendants admit that the Oklahoma Department of Environmental Quality recommended that residents not use the shallow groundwater in these areas due to the elevated levels of zinc, arsenic, lead, and/or cadmium.  Defendants encouraged the closure of groundwater wells in the vicinity.

121.   Additionally, Defendants' admit that Smelter waste, including byproducts and other materials from the Smelter, were reused, with Defendants' permission, in the construction of roads, driveways, parking lots, and other facilities within the City of Blackwell, Oklahoma.  After the Smelter's closure, Defendants dug a pit/landfill in which it placed an estimated 160,000 cubic yards of Smelter waste.  Elevated levels of heavy metals from the Smelter continue to be found in soils throughout the City of Blackwell, including on many of Plaintiffs' properties.

122.   In February 1972, Defendant BZC announced that the Smelter faced possible closure due to "pollution problems.  The Smelter's closure was made official on May 17, 1972.  In a public statement, Defendant BZC stated "[a]dditions of costly equipment to meet pending environmental control regulations cannot be economically justified."  AMAX, Inc. (now Cyprus Amax Minerals Company), of which Defendant BZC was a wholly owned subsidiary, also stated "the passage of anti-pollution legislation made it a matter of time before the plant was likely to close.  The deadlines were rapidly approaching—October for lead and zinc emissions and July 1 for sulphur dioxide."

123.   By 1974, the Smelter completely ceased operations.  Defendant BZC razed the Smelter and transferred title to the Blackwell Industrial Authority (herein "BIA"), a public trust of the State of Oklahoma.  The BIA then developed the former Smelter site as

an industrial park, selling and leasing various portions of the site to local industries.  The BIA did not generate pollution from the smelter, did not create smelter waste, and did not operate the Smelter.

124.   Defendant BZC was aware its Smelter was potentially the source of pollution and contamination as early as 1942, when a lawsuit was filed alleging smoke, gas fumes, sulphur fumes, zinc fumes, and zinc deposits from the Smelter had a toxic effect on a farm located one-half miles from the Smelter, which rendered the land infertile at that time.

125.   Moreover, in the late 1960s, a group of nearby farmers complained that their crops were increasingly unhealthy and unharvestable.   Rather than address the continued complaints relating to ongoing pollution from the Smelter, Defendants simply compensated the farmers for their crop and continued operating as usual.

126.   Yet another lawsuit was filed in 1972 alleging the Smelter caused "vast quantities of dangerous, damaging and harmful fumes, vapor, smoke, dust, gases and particulate matter . . .which substances, materials and elements have damaged and are damaging the land, corps and property of others, including plaintiffs."

127.   Zinc, arsenic, lead, and cadmium are some of the toxic, heavy metals emitted from the Smelter.   Concentrations of heavy metals, such as zinc, arsenic, lead, and cadmium, in either soil or water is generally measured by laboratory analysis and is not readily discernible absent scientific testing.  Defendants admit that zinc, arsenic, lead, and cadmium pollutants are likely to be odorless and tasteless.  Defendants intentionally emitted and disposed of toxic, heavy metals in order to profit financially.

128.    Defendants admit that the International Agency for Research on Cancer ("IARC"), the United States Department of Health and Human Services ("DHHS"), and the United States Environmental Protection Agency ("EPA") all classify arsenic as a known human carcinogen for certain exposure pathways.  Moreover, Defendants admit that the ingestion or inhalation of arsenic compounds can under specific circumstances lead to adverse health consequences.

129.    Defendants further admit that IARC, DHHS, and EPA classify lead as a probable or reasonably anticipated human carcinogen and that ingestion or inhalation of lead compounds can lead to adverse health consequences.

130.    Defendants admit that the ingestion or inhalation of cadmium compounds can lead to adverse health consequences.  Defendants also admit that DHHS classifies cadmium as a known human carcinogen, IARC classifies cadmium as a human carcinogen, and EPA classifies cadmium as a probable human carcinogen.

131.    Additionally, Defendants admits that ingestion or inhalation of zinc compounds can lead to adverse health consequences.

132.    Soil samples taken in 1991 and 1992 establish the soil surrounding the Smelter contained heavy metals at concentrations greater than three times background concentration and greater than their respective sample quantitation limits.

133.    As a result of Defendants' wrongful acts, heavy metals such as zinc, arsenic, lead, and cadmium contaminate the exterior and interior of Plaintiffs' homes. The pollution released by the Smelter is transported by wind, groundwater percolation, and other conduits onto and into the homes, properties, and persons of Plaintiffs and other

citizens of the City of Blackwell.   Because the contamination is in the soil, it is continuously brought into homes, schools, and places of business.

134.   Children in Blackwell continue to have elevated blood lead levels as a result of the widespread dispersion of pollutants from Defendants' Smelter.   Indeed, approximately 30% of children 1-72 months of age in Blackwell are contaminated with lead in the range of 5 micrograms per deciliter (µg/dL) or greater.   The Centers for Disease Control and Prevention use a reference level of 5 µg/dL to identify children who have been exposed to lead and who require case management.   Distressingly, approximately 10% of children 1-72 months of age in Blackwell had levels of lead equal or greater than 10 µg/dL.[1]

135.   In 1992, the EPA evaluated whether the Smelter should be placed on the National Priorities List as a Superfund site.   In response, the Oklahoma State Department of Health (herein "OSDH") (predecessor to the Oklahoma Department of Environmental Quality), Defendant BZC, BIA, and the City of Blackwell entered into a Consent

---

[1]   Lead exposure is particularly devastating to children.   Intense, high-dose lead exposure causes acute symptomatic poisoning in which colic, anemia, and central nervous system damage can result in coma, convulsions, and even death.   Blood lead levels previously considered to be safe are now understood to compromise children's health and damage multiple organs, even when the child is not exhibiting overt lead poisoning symptoms.   Low-level lead toxicity in utero and during childhood damages the developing brain and nervous system.   Indeed, even relatively low levels of lead exposure adversely affects the immune, reproductive, and cardiovascular systems of children.

Plaintiffs' note that, while this suit does not allege personal injuries as a result of heavy metal exposure, the disturbing facts of such rampant child lead exposure in Blackwell evidence the continuous and ongoing public nuisance created by Defendants' Smelter.   Plaintiffs continue to evaluate their potential claims for personal injury due to exposure to heavy metals and reserve the right to bring such claims at a later time upon the discovery of evidence showing injury.

Agreement and Final Order for Investigation and Remediation (herein "1992 CAFO") to address the investigation and remediation of the Smelter and of surrounding areas. The 1992 CAFO did not include and was not applicable to private property, such as Plaintiffs', which was contaminated by Defendants' Smelter.

136.   Two years later, in 1994, the Oklahoma Department of Environmental Quality (herein "ODEQ") executed a memorandum of understanding with the EPA in which ODEQ undertook enforcement and oversight of remediation for the Smelter.

137.   On April 4, 1996, the ODEQ issued its Record of Decision (herein "ROD") requiring soil remediation of the Blackwell Zinc Site. Specifically, ODEQ found that "[a]ctual or threatened releases of hazardous substances from this site, if not addressed by implementing the response action selected in this ROD, may present an imminent and substantial endangerment to public health, welfare, or the environment."

138.   Following the CAFO and MOU, Cyprus Amax, among others, conducted an environmental investigation and remediation in Blackwell on behalf of BZC under the oversight of ODEQ and EPA. Despite Freeport-McMoRan's "commit[ment] to implementing effective and responsible solutions to the environmental issues associated with the former smelter," it refuses to remediate the contamination Defendants caused in Plaintiffs' homes and on Plaintiffs' properties.

139.   Pursuant to Local Court Rule 3.7, Plaintiffs hereby give written notice with the Court of the following related cases involving common property and common issues of fact growing out of the same transaction:

a. *Coffey et al. v. Freeport-McMoRan Copper & Gold Inc., Phelps Dodge Corporation, Cyprus Amax Minerals Company, Amax, Inc., Blackwell Zinc Company, Inc., Blackwell Industrial Authority, and BNSF Railway Company*, CJ-2008-68, In the District Court of Kay County, Oklahoma (filed April 14, 2008), The Honorable John Canavan presiding.

b. *Kay County Board of County Commissioners v. Freeport-McMoRan Copper & Gold, Inc., Freeport-McMoRan Corporation f/k/a Phelps Dodge Corporation, Cyprus Amax Minerals Company, and Blackwell Zinc Company, Inc,* 5:12-cv-00601-C, In the United States District Court for the Western District of Oklahoma (removed May 24, 2012), The Honorable Robin Cauthron presiding.

## CLASS ALLEGATIONS

140.   Plaintiffs incorporate by reference and restate all allegations of the preceding paragraphs as if fully set forth herein.

141.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to certify a class of similarly situated persons defined as follows:

a. All persons owning real property impacted by the release of harmful substances by Defendants from the Smelter and its related facilities in Blackwell, Oklahoma;  Excluded from the class are Defendants, Defendants' management employees (but not non-management employees), Defendants agents having management authority, attorneys, and other representatives with management authority. Also excluded from the class are all those persons whose claims are validly waived as a result of the settlement of prior litigation, to the extent and for the time periods said prior litigation waived any such claims.

142.   The members of the classes are so numerous that joinder of all the individual members is impracticable.  Over 100 properties have been and continue to be polluted by releases from the Smelter.

143.   The claims of the proposed class raise common questions of law and fact that predominate over any questions affecting only individual Class members.  These questions include without limitation:

a.   Whether, and to what extent, Defendants emitted or allowed to be emitted, substances from the Smelter;

b.   Whether the substances emitted or allowed to be emitted from the Smelter were and are hazardous;

c.   Whether, and to what extent, Defendants are responsible for the hazardous substances on and around the properties of Plaintiffs and the Class;

d.   Whether, and to what extent, the actions and operations of Defendants resulted in a continuing trespass of the properties of Plaintiffs and the Class;

e.   Whether, and to what extent, the actions and operations of Defendants have disturbed and are disturbing the free use, possession, and enjoyment of the properties of Plaintiffs and the Class such that it constitutes a continuing nuisance;

f.   Whether, and to what extent, Defendants' actions and operations at the Smelter constitute a public nuisance;

g. Whether Defendants negligently released toxic and harmful substances on Plaintiffs' properties;

h. Whether Defendants' release of toxic and harmful substances on Plaintiffs' properties is negligent *per se*;

i. Whether Defendants have and continue to interfere with the Class Members' use and enjoyment of their properties;

j. Whether Defendants have and continue to cause pollutants to be released from the Smelter that have come to reside upon the properties of Plaintiffs and the Class;

k. Whether, and to what extent, Defendants possessed knowledge regarding the dangers surrounding their conduct at and around the Smelter;

l. Whether, and to what extent, Defendants possessed knowledge of their release of toxic materials beyond the Smelter site;

m. When Defendants became aware of the release of toxic material beyond the Smelter site;

n. What actions Defendants took after becoming aware toxic materials had been released beyond the Smelter site;

o. Whether, and to what extent, Defendants provided notice or warning to Plaintiffs and the Class regarding the dangers associated with exposure to, and/or ingestion of, the substances emitted from the Smelter;

p.  Why Defendants did not initiate remediation of the pollution caused by their release of toxic materials immediately after becoming aware of the release;

q.  Whether Defendants' initiation of remediation efforts two decades after becoming aware of the pollution caused by their release of toxic materials constitutes negligence;

r.  Whether, and to what extent, Defendants' actions are negligent, intentional, malicious, or reckless conduct;

s.  Whether, and to what extent, Defendants' actions are considered malicious under Oklahoma law because Defendants had—and have—no excuse or valid reason for polluting Plaintiffs' properties and exposing Plaintiffs to toxic materials;

t.  What measure of damages will adequately and reasonably compensate Plaintiffs for their property damages;

u.  What measure of punitive damages will deter Defendants from such conduct in the future; and

v.  How should punitive damages be allocated among class members.

144.  The named Plaintiffs' claims are typical, if not identical, to the claims of the putative class members and are based upon the same factual and legal theories. Defendants caused the discharge of pollutants from the Smelter onto and under the Plaintiffs' lands and property in violation of federal and state pollution laws, making the contamination of soil, surface water, and groundwater resources through such discharges

illegal.  Moreover, this runoff and absorption of pollutants onto Plaintiffs' property is a continuing nuisance and trespass to them as it is to other landowners who will be affected in the future through the natural distribution of groundwater resources.  The wrongs suffered and the remedies sought by the named Plaintiffs, the Class Representatives, and the other putative class members are identical, and Defendants have no unique defenses.

145.   Plaintiffs will fairly and adequately represent the interests of the respective Class.  Each of the Plaintiffs is committed to prosecuting this action vigorously and has retained competent counsel experienced in class action litigation of this nature. The Plaintiffs are members of the putative class and do not have interests antagonistic to, or in conflict with, other members of the putative class with respect to this litigation or claims being raised herein.

146.   A class action is superior to other available methods of prosecuting these claims for the fair and efficient adjudication of this controversy.  The prosecution of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for the Defendants, and/or substantially impair or impede the ability of Class members to protect their interests.  And, the issues presented above, which are common to all of the putative class members, predominate over any other issues, including any defenses the Defendants may assert.

147.   A class action will result in an orderly and expeditious administration of this controversy and of Plaintiffs' and the Class Members' claims, and will save this

Court and the Parties economies of time, effort, and expense, as well as assure uniformity of decisions.

148.   Plaintiffs do not anticipate any difficulty in the management of this litigation as a class action.

## CLAIMS AT LAW AND IN EQUITY

### COUNT I
### TRESPASS

149.   Plaintiffs incorporate by reference and restate all allegations of the preceding paragraphs as if fully set forth herein.

150.   Defendants intentionally and continuously or intermittently caused a trespass to Plaintiffs' properties by releasing and dispersing toxic and harmful substances from the Smelter that have caused and will continue to cause an actual, physical invasion of and interference with Plaintiffs' property interests.  Defendants' release of toxic and harmful substances is the direct and proximate cause of Plaintiffs' injuries and damages.

151.   The toxic and harmful substances trespassing on Plaintiffs' properties came from the Smelter and/or the former Smelter site and continue to be owned by and the responsibility of Defendants.

152.   The actual and physical invasion of and interference with Plaintiffs property interests have occurred and continue to occur without the permission, authority, or consent of Plaintiffs.

153.   Plaintiffs are therefore entitled to damages in an amount in excess of $5,000,000.00, and to equitable relief in the form of appropriate injunctive or abatement relief, as a result of Defendants' conduct alleged herein.

## COUNT II
## PRIVATE NUISANCE

154.   Plaintiffs incorporate by reference and restate all allegations of the preceding paragraphs as if fully set forth herein.

155.   Defendants' unlawful actions in connection with the dispersion of pollutants from the Smelter in excess of that allowed by law subjects Plaintiffs to unreasonable inconvenience, interference, annoyance, and loss of use and value of their property.

156.   Defendants' failure to remediate the dispersion of pollutants from the Smelter renders Plaintiffs insecure in the use of their properties and subjects Plaintiffs to unreasonable inconvenience, interference, annoyance, and loss of use and value of their property.

157.   Defendants' conduct constitutes a private nuisance pursuant to 50 Okla. Stat. § 3.  Such private nuisance and the injuries caused thereby are substantial, tangible, continuing, and both temporary and permanent.  Moreover, the continuation of such private nuisance threatens irreparable harm to Plaintiffs' property.

158.   "Every successive owner of property who neglects to abate a continuing nuisance upon, or in the use of such property, created by a former owner, is liable therefor in the same manner as the one who first created it."  50 Okla. Stat. § 5.

159.   Plaintiffs are therefore entitled to damages in an amount in excess of $5,000,000.00, and to equitable relief in the form of appropriate injunctive or abatement relief, as a result of Defendants' conduct alleged herein.

## COUNT III
## PUBLIC NUISANCE

160.   Plaintiffs incorporate by reference and restate all allegations of the preceding paragraphs as if fully set forth herein.

161.   Defendants' unlawful conduct in connection with the wide-spread dispersion of pollutants from the Smelter in excess of that allowed by law constitutes a public nuisance in violation of 50 Okla. Stat. § 2.

162.   Defendants' unlawful conduct annoys, injures, and endangers Plaintiffs comfort, repose, health, and safety and renders Plaintiffs and the Class insecure in life and in the use of their property.

163.   Indeed, Defendants' unlawful conduct constitutes a public nuisance *per se* under 27A Okla. Stat. § 2-6-105, which prohibits any person or entity from polluting air, land, or waters of the state.

164.   Plaintiffs are therefore entitled to damages in an amount in excess of $5,000,000.00, and to equitable relief in the form of appropriate injunctive or abatement relief, as a result of Defendants' conduct alleged herein.

## COUNT IV
## NEGLIGENCE

165.   Plaintiffs incorporate by reference and restate all allegations of the preceding paragraphs as if fully set forth herein.

166.    Plaintiffs have been injured as a direct result of Defendants' unlawful dispersion of toxic and harmful pollutants from the Smelter.

167.    Defendants owe Plaintiffs a duty to not allow pollutants, such as zinc, arsenic, cadmium, and lead, to be released from the Smelter onto Plaintiffs' homes, land, and properties.  Defendants breached that duty and have caused damage to Plaintiffs' homes, land, and properties.

168.    Defendants failed to exercise ordinary care in the release of pollutants from the Smelter.

169.    Moreover, Plaintiffs' injuries were the direct and proximate result of Defendants' actions.

170.    Plaintiffs are entitled to damages in an amount in excess of $5,000,000.00 as a result of Defendants' conduct alleged herein.

## COUNT V
## NEGLIGENCE *PER SE*

171.    Plaintiffs incorporate by reference and restate all allegations of the preceding paragraphs as if fully set forth herein.

172.    Oklahoma law prohibits Defendants from releasing air pollutants from the Smelter and from polluting waters of the State.

173.    As a direct result of Defendants actions and operations at the Smelter, air pollutants were released from the Smelter in violation of Oklahoma Law, and Plaintiffs were and continue to be forced to breathe air pollutants originally emitted from the Smelter.

174.   As a direct result of Defendants actions and operations at the Smelter, waters of the State were polluted and contaminated.

175.   Defendants violated Oklahoma law, causing severe pollution, contamination, discomfort, loss of quiet enjoyment, and other damages to Plaintiffs' use and enjoyment of their Property.  Defendants are thereby liable per se.

176.   Plaintiffs are entitled to damages in an amount in excess of $5,000,000.00 as a result of Defendants' conduct alleged herein.

## COUNT VI
## UNJUST ENRICHMENT

177.   Plaintiffs incorporate by reference and restate all allegations of the preceding paragraphs as if fully set forth herein.

178.   Defendants have been and continue to be greatly and unjustly enriched by their acts and omissions, including without limitation Defendants' failure to properly dispose of the toxic and harmful substances released from the Smelter, as well as Defendants' failure to remove such toxic and harmful substances from Plaintiffs' properties.   Plaintiffs' properties have been and continue to be used as storage depositories for Defendants' toxic and harmful substances.

179.   Plaintiffs did not voluntarily confer this benefit to Defendants; nor do Defendants have any legal justification for using Plaintiffs' properties without permission as storage sites for Defendants toxic and harmful substances.

180.   No remedy at law can compensate Plaintiffs for Defendants' unauthorized release of toxic and harmful substances onto Plaintiffs' properties.

181.   Plaintiffs are entitled under Oklahoma law to recover from Defendants the expenditures unjustly avoided, or monies which would be unconscionable for Defendants to retain, which includes the profits obtained by Defendants as a result of their pollution of Plaintiffs home, land, and properties.

182.   Plaintiffs are therefore entitled to equitable damages from Defendants, by reason of Defendants' unjust enrichment, including the recovery of the profits obtained by Defendants as a result of their pollution of Plaintiffs' properties.

## COUNT VII
## PUNITIVE DAMAGES

183.   Plaintiffs incorporate by reference and restate all allegations of the preceding paragraphs as if fully set forth herein.

184.   The acts and omissions of Defendants were willful, malicious, reckless, and done in wanton disregard of Plaintiffs' property rights, thereby entitling Plaintiffs to punitive damages against Defendants.

185.   Accordingly, Plaintiffs are entitled to punitive damages in accordance with 23 Okla. Stat. § 9.1.

## RESERVATION OF CLAIMS

Plaintiffs are not pursuing any claims for damages to natural resources pursuant to 42 U.S.C.A. § 9601 and hereby expressly reserve their right to pursue these and all other statutory environmental causes of action.

**PRAYER FOR RELIEF**

WHEREFORE, together, Plaintiffs request this Court award actual damages and punitive damages against Defendants and for Plaintiffs, as set forth herein.  Plaintiffs further request the Court enjoin Defendants' continued public nuisance, private nuisance, and trespass.  Plaintiffs further request the Court require remediation of their properties and award to Plaintiffs their costs and disbursements, including reasonable fees for attorneys and experts, as well as provided such other relief as may be just and proper under the laws of the State of Oklahoma.

**JURY DEMAND**

Plaintiffs demand a trial by jury for all issues so triable.

**ATTORNEYS' LIEN**

Attorneys hereby assert a lien against any settlement or judgment in this matter.

LIEN CLAIMED.

Respectfully submitted this Wednesday, October 30, 2013,


/s/ Krystina E. Phillips
Krystina E. Phillips, OBA No. 30111
Dallas L.D. Strimple, OBA No. 30266
ENVIRONMENTAL LAW CENTER
1723 East 15th Street, Suite 100
Tulsa, Oklahoma  74104
Telephone:  (918) 347-6169
Facsimile:  (918) 398-0514
krystina@aamodt.biz
dallas@aamodt.biz

*and*

Ryan Ellis, OBA No. 30858
THE LAW OFFICES OF TRAE GRAY, PLLC
28 North Main
Coalgate, Oklahoma  74538
Telephone:  (580) 927-2314
Facsimile:  (580) 927-2315
ryanellis@landownerfirm.com

***ATTORNEYS FOR PLAINTIFFS***