IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| HELEN BRIGGS, | ) | |
| | ) | |
| Individually and as representative | ) | |
| for those similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SONYA ALEXANDER, Individually; et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. CIV-13-1157-M |
| | ) | |
| v. | ) | |
| | ) | |
| FREEPORT-MCMORAN COPPER & GOLD INC.; | ) | |
| FREEPORT-MCMORAN CORPORATION | ) | |
| f/k/a PHELPS DODGE CORPORATION; | ) | |
| CYPRUS AMAX MINERALS COMPANY; and | ) | |
| BLACKWELL ZINC COMPANY, INC. | ) | |
| | ) | |
| Defendants | ) | |

## DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT

COME NOW Defendants Freeport-McMoRan Copper & Gold Inc., Freeport-McMoRan Corporation (f/k/a Phelps Dodge Corporation), Cyprus Amax Minerals Company, and Blackwell Zinc Company, Inc. ("Defendants") and file this their Answer in response to Plaintiffs' Complaint.

All allegations in Plaintiffs' Complaint not specifically admitted below are denied.

1.     Defendants deny the allegations in paragraph 1, except that Defendants admit that (i) the Blackwell Smelter produced millions of tons of zinc alloy during its

operational life; (ii) the Blackwell Smelter was located on the western edge of the City of Blackwell; (iii) the Blackwell Smelter operated from approximately 1916 to 1974; and (iv) soil in certain areas of the City of Blackwell has in the past and currently contains zinc, arsenic, lead, and/or cadmium in concentrations above naturally occurring background levels, but deny that all such concentrations above background levels were caused by Defendants, or have caused Plaintiffs any damage or legally recognized injury.

2.      Defendants deny the allegations in paragraph 2 except that Defendants admit that the cost of renovating the Smelter facility was one of several factors in the decision to close the Smelter.

3.      Defendants deny the allegations in paragraph 3 except that Defendants admit that certain of the Plaintiffs are landowners near the vicinity of the acreage once occupied by the Smelter.

4.      Defendants deny the allegations in paragraph 4 and specifically deny that Plaintiffs have suffered any damage or legally recognized injury.

5.      Defendants deny the allegations in paragraph 5 and specifically deny that Plaintiffs are entitled to any relief from Defendants.

6.      Defendants deny the allegations in paragraph 6 and specifically deny that Plaintiffs are entitled to any relief from Defendants.  Defendants also specifically deny that this action can be maintained as a class action and deny the existence of any facts that would give rise to any valid claim.

7.     The statements in paragraph 7 are legal conclusions and do not require a response.

8.     Defendants admit that no defendant is a citizen of Oklahoma.  The remainder of the statements in paragraph 8 are legal conclusions and do not require a response.

9.     The statements in paragraph 9 are legal conclusions and do not require a response.

10.    Defendants admit that as of November 2013, Helen Briggs owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 10.

11.    Defendants deny that Sonya Alexander currently owns property in Blackwell, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 11.

12.    Defendants admit that as of November 2013, Sergio and Teresa Arteaga owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 12.

13.    Defendants admit that as of November 2013, Michael Assidio owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 13.

14.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 14.

15.     Defendants admit that as of November 2013, Jimmy and Mindy Beard owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 15.

16.     Defendants admit that as of November 2013, Bethesda of Blackwell owned property in the City of Blackwell, Kay County, Oklahoma.

17.     Defendants admit that as of November 2013, Donald and Majorie Bevington owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 17.

18.     Defendants admit that as of November 2013, Daniel Bowling owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 18.

19.     Defendants admit that as of November 2013, Edna Bowling owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 19.

20.     Defendants admit that as of November 2013, Dan Briggs owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 20.

21.     Defendants admit that as of November 2013, Jim and Rosalie Briggs owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 21.

22.     Defendants admit that as of November 2013, Sylvia Bryant owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 22.

23.     Defendants admit that as of November 2013, Teresa Caldwell owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 23.

24.     Defendants admit that as of November 2013, Melvin Canaan owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 24.

25.     Defendants admit that as of November 2013, Ruby Cassady owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 25.

26.     Defendants admit that as of November 2013, LaDonna Cooper owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 26.

27.     Defendants admit that as of November 2013, Cecil & Beverly Day owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 27.

28.     Defendants deny that Marcy Decker currently owns property in Blackwell, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 28.

29.     Defendants admit that as of November 2013, Cary Denton owned property in the City of Blackwell, Kay County, Oklahoma.     Defendants lack knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 29.

30.    Defendants admit that as of November 2013, Michael Denton owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 30.

31.    Defendants admit that as of November 2013, the James C. Dunn Revocable Living Trust owned property in the City of Blackwell, Kay County, Oklahoma.

32.    Defendants admit that as of November 2013, Lester Jr. and Vicki Ebert owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 32.

33.    Defendants admit that as of November 2013, Ralph Epperly Sr. owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 33.

34.    Defendants admit that as of November 2013, Ralph Epperly Jr. owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 34.

35.     Defendants admit that as of November 2013, Richard Gates owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 35.

36.     Defendants admit that as of November 2013, Christopher and Jamie Glass owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 36.

37.     Defendants admit that as of November 2013, Jacob Glass owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 37.

38.     Defendants admit that as of November 2013, Kenneth and Michelle Glass owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 38.

39.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 39.

40.     Defendants admit that as of November 2013, Cecil and Elsa Greenfield owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge

or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 40.

41.     Defendants admit that as of November 2013, Edward & Phyllis Gregory owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 41.

42.     Defendants admit that as of November 2013, Ronald and Annona Hall owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 42.

43.     Defendants admit that as of November 2013, the Alfredo C. Handy & Hazel J. Handy Revocable Living Trust owned property in the City of Blackwell, Kay County, Oklahoma.

44.     Defendants admit that as of November 2013, Gary and Ella Haskins owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 44.

45.     Defendants admit that as of November 2013, Linda Heilig owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 45.

46.     Defendants admit that as of November 2013, Barbara Herr owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 46.

47.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 47.

48.     Defendants admit that as of November 2013, Meilissa Jenkins owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 48.

49.     Defendants admit that as of November 2013, Kimberly Jernigan owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 49.

50.     Defendants admit that as of November 2013, James Lantz owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 50.

51.     Defendants admit that as of November 2013, Sherri and Terry Littlefield owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 51.

52.     Defendants admit that as of November 2013, James and Glennis Lively owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 52.

53.     Defendants admit that as of November 2013, Jesse Lively owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 53.

54.     Defendants admit that as of November 2013, Rhonda Loveall owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 54.

55.     Defendants admit that as of November 2013, Dorwin Lumly owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 55.

56.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 56.

57.     Defendants admit that as of November 2013, Peggy Massey owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 57.

58.     Defendants admit that as of November 2013, Douglas and Twila McCleary owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 58.

59.     Defendants admit that as of November 2013, Susan McEarchern owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 59.

60.     Defendants deny that Laquita Miller currently owns property in Blackwell, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 60.

61.     Defendants admit that as of November 2013, Monte and Joyce Moore owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge

or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 61.

62.     Defendants admit that as of November 2013, Randy Newman owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 62.

63.     Defendants admit that as of November 2013, John and Catherine North owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 63.

64.     Defendants admit that as of November 2013, Johnnie and Cheryl Paige owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 64.

65.     Defendants admit that as of November 2013, Bo Pannell owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 65.

66.     Defendants admit that as of November 2013, Christian and Jackie Pannell owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack

knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 66.

67.     Defendants admit that as of November 2013, Joby and Linda Parr owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 67.

68.     Defendants admit that as of November 2013, Derick Payne owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 68.

69.     Defendants admit that as of November 2013, Karen Roberts owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 69.

70.     Defendants admit that as of November 2013, Alexander and Diania Robles owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 70.

71.     Defendants deny that Dian Sabin currently owns property in Blackwell, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 71.

72.     Defendants deny that Leonard Sabin currently owns property in Blackwell, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 72.

73.     Defendants admit that as of November 2013, Pershawnia Scrimsher-Atchley owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 73.

74.     Defendants admit that as of November 2013, Lawrence and Julia Self owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 74.

75.     Defendants admit that as of November 2013, Delbert Shirley owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 75.

76.     Defendants admit that as of November 2013, Darl and Jewel Shope owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge

or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 76.

77.     Defendants admit that as of November 2013, Sam and Delores Shorey owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 77.

78.     Defendants admit that as of November 2013, James and Lexia Smith owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 78.

79.     Defendants admit that as of November 2013, Keith and Marie Snow owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 79.

80.     Defendants admit that as of November 2013, Russell and Denise Sodowsky owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 80.

81.     Defendants admit that as of November 2013, Keyra Soto owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information

sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 81.

82.    Defendants admit that as of November 2013, Donald and Kathleen Spence owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 82.

83.    Defendants admit that as of November 2013, Ronald and Sherry Spracklin owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 83.

84.    Defendants admit that as of November 2013, Becky Stevens owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 84.

85.    Defendants admit that as of November 2013, George and Teresa Stout owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 85.

86.    Defendants admit that as of November 2013, Cecil and Patricia Stuever owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge

or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 86.

87.     Defendants admit that as of November 2013, Melody Sullivan owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 87.

88.     Defendants admit that as of November 2013, Melvin Tannehill owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 88.

89.     Defendants admit that as of November 2013, Charles and Mary Tate owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 89.

90.     Defendants admit that as of November 2013, Vicky Thele owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 90.

91.     Defendants admit that as of November 2013, Dawn Thele owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 91.

92.     Defendants admit that as of November 2013, Warren Ward owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 92.

93.     Defendants admit that as of November 2013, Jerry Webber owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 93.

94.     Defendants admit that as of November 2013, Jennifer Weeden owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 94.

95.     Defendants admit that as of November 2013, Rachel Weeden-Kirk owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 95.

96.     Defendants admit that as of November 2013, Rebekah Weeden-Wimer owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge

or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 96.

97.     Defendants admit that as of November 2013, Virginia Welch owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 97.

98.     Defendants admit that as of November 2013, John and Diane West owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 98.

99.     Defendants admit that as of November 2013, Darlene Wieland owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 99.

100.    Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 100.

101.    Defendants admit that as of November 2013, Marion Williamson owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 101.

102.   Defendants admit that as of November 2013, James and Carolyn Wilson owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 102.

103.   Defendants admit that as of November 2013, Peggy Wood owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 103.

104.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 104.

105.   Defendants admit that as of November 2013, Darin and Cindy Wynn owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 105.

106.   Defendants admit that as of November 2013, Elmer and Thurra Wynn owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 106.

107.   Defendants admit that as of November 2013, Jack and Melinda Wynn owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge

or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 107.

108.   Defendants admit that as of November 2013, Jared Wynn owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 108.

109.   Defendants admit that as of November 2013, Mike Wynn owned property in the City of Blackwell, Kay County, Oklahoma.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 109.

110.   Defendants admit that as of November 2013, Glenn and Terry Young owned property in the City of Blackwell, Kay County, Oklahoma.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 110.

111.   Defendants admit that Freeport-McMoRan Copper & Gold Inc. ("FCX") is a corporation organized and existing under the laws of the State of Delaware.  Defendants deny that FCX's principal office is located at One North Central Avenue, Phoenix, Arizona, 85004, but admit its principal office is located at 333 North Central Avenue, Phoenix, Arizona, 85004.  Defendants admit that FCX is authorized to do business in the State of Oklahoma and that FCX acquired Freeport McMoRan Corporation ("FMC") in

March 2007, at which time FMC became a wholly-owned subsidiary of FCX and that FMC was formerly known as Phelps Dodge Corporation. Defendants otherwise deny each of the remaining allegations in paragraph 111, including allegations that FCX is the alter ego of Blackwell Zinc Company, Inc. ("BZC"), that FCX performs, directs, or causes to be performed all obligations of BZC related to the Smelter, and that FCX accepts responsibility for all cleanup, remediation, and liabilities associated with the historic operation of the Smelter.

112. Defendants deny that FMC is a corporation organized and existing under the law of the State of New York. Defendants admit that FMC was incorporated in the State of Delaware on November 13, 2013. Defendants deny that FMC's principal office is located at One North Central Avenue, Phoenix, Arizona, 85004, but admit its principal office is located at 333 North Central Avenue, Phoenix, Arizona, 85004. Defendants admit that FMC acquired Defendant Cyprus Amax Minerals Company ("Cyprus Amax") in 1999, at which time Cyprus Amax became a wholly-owned subsidiary of FMC. Defendants admit that FMC has conducted certain environmental investigation and remediation activities in Blackwell on behalf of BZC. Defendants otherwise deny each of the remaining allegations in paragraph 112, including allegations that FMC is the alter ego of BZC, that FMC performs, directs, or causes to be performed all obligations of BZC related to the Smelter, that FMC is responsible for all cleanup, remediation, and liabilities associated with the operation of the Smelter, and that FMC is responsible for the operation of a cadmium plant or related disposition of waste from the Smelter.

113.   Defendants admit that Cyprus Amax is a corporation organized and existing under the laws of the State of Delaware.   Defendants deny that Cyprus Amax's principal office is located at One North Central Avenue, Phoenix, Arizona, 85004, but admit its principal office is located at 333 North Central Avenue, Phoenix, Arizona, 85004. Defendants admit that Cyprus Amax was created by a merger between Cyprus Minerals Company and Amax, Inc. in 1993, that AMAX, Inc. was formerly known as American Metal Climax, Inc., and that BZC formerly was a wholly-owned subsidiary of Amax, Inc. Defendants admit that Cyprus Amax has conducted certain environmental investigation and remediation activities in Blackwell on behalf of BZC.   Defendants otherwise deny each of the remaining allegations in paragraph 113, including allegations that Cyprus Amax is the alter ego of BZC, that Cyprus Amax performs, directs, or causes to be performed all obligations of BZC related to the Smelter, and that Cyprus Amax is responsible for all cleanup, remediation, and liabilities associated with the historic operation of the Smelter.

114.   Admitted.

115.   Defendants deny the allegations in paragraph 115.

116.   Defendants deny the allegations in paragraph 116.

117.   Defendants deny the allegations in paragraph 117.

118.   Defendants deny the allegations in paragraph 118, except that Defendants admit that (i) the Blackwell Smelter began operation in 1916; (ii) the Blackwell Smelter

facility was located in Blackwell, Oklahoma; (iii) BZC owned and operated the Blackwell Smelter; (iv) the Blackwell Smelter produced millions of tons of zinc alloy during its operational life; and (v) a cadmium plant was opened at the Blackwell Smelter in or about 1957.

119.   Defendants deny the allegations in paragraph 119, except that Defendants admit that air emissions from historical smelter operations resulted in the deposit of particulates on some properties in the vicinity of the Smelter but deny that such particulates interfere with Plaintiffs' ability to use their properties or have caused Plaintiffs any damage or legally recognized injury.

120.   Defendants deny the allegations in paragraph 120, except that Defendants admit that (i) zinc ore concentrates and residues often contained some level of zinc, arsenic, lead, cadmium and/or other metals; (ii) zinc ore concentrates were stored on site at the Smelter prior to use; (iii) the soil in certain areas in Blackwell contained zinc, arsenic, lead, and/or cadmium at concentrations above naturally occurring background levels, but deny that Defendants caused all such concentrations above background levels, or that they have caused Plaintiffs any damage or legally recognized injury; (iv) certain holding areas and ponds were unlined;  (v) zinc and cadmium in concentrations above naturally occurring background levels have been detected in shallow groundwater in certain areas in the City of Blackwell, but deny that such concentrations of metals above background levels have caused Plaintiff any damage or legally recognized injury; and that (vi) the Oklahoma Department of Environmental Quality ("ODEQ") has

recommended that residents not use the shallow groundwater in specific areas and the ODEQ encouraged the closure of groundwater wells in certain areas of the City of Blackwell, but deny that the shallow groundwater in Blackwell has ever been suitable for drinking.

121.    Defendants deny the allegations in paragraph 121, except that Defendants admit (i) historically there were some instances where Blackwell Smelter byproducts and other materials were reused in the construction of roads, driveways, parking lots and other facilities within the City of Blackwell, but deny that the reuse of Blackwell Smelter materials has caused Plaintiffs any damage or other legally recognized injury; that (ii) the soil in certain areas in Blackwell contained zinc, arsenic, lead, and/or cadmium at concentrations above naturally occurring background levels, but deny that all such concentrations above background levels were caused by Defendants, or have caused Plaintiffs any damage or legally recognized injury; and (iii) the existing consolidation area on the former Smelter site contains soil and former Smelter materials.

122.    Defendants lack sufficient information to admit or deny whether the statement in the first sentence of paragraph 122 was actually made by a BZC representative, whether such person was authorized to make such statement on behalf of BZC, and whether such person was accurately quoted in the article that appeared in the Oklahoma City newspaper in February 1972.   Defendants admit the remaining allegations in paragraph 122.

123.    Defendants lack sufficient information to admit or deny whether and to what extent the Blackwell Industrial Authority's ("BIA's") management of the former Smelter property and the activities of BIA and its tenants thereon contributed to the distribution or migration of Smelter-related materials.  Except as stated above, admitted.

124.    Defendants admit that a lawsuit was filed in 1942 alleging that emissions from the Blackwell Smelter impacted crop yield on a farm located ½ mile south of the Smelter. Defendants deny the remaining allegations in paragraph 124.

125.    Defendants lack sufficient information to identify the specific claims referenced in paragraph 125, but admit that during the referenced time frame certain farmers raised issues concerning crop yields and BZC provided assistance and support to farmers in response to agricultural issues allegedly arising from the operation of the Blackwell Smelter.  Defendants deny the remaining allegations in paragraph 125.

126.    Defendants admit that a lawsuit was filed against BZC, American Metal Climax, Inc., and AMAX Lead & Zinc, Inc. in 1972.  The allegations in the lawsuit speak for themselves.  Defendants deny the remaining allegations in paragraph 126.

127.    Defendants deny the allegations in paragraph 127, except that Defendants admit that (i) Smelter byproducts often contained some level of zinc, arsenic, lead, cadmium and/or other metals; (ii) the concentration of zinc, arsenic, lead and cadmium in either soil or water is generally measured by laboratory analysis and is not readily

discernible absent scientific testing; and (iii) under the circumstances where these elements are present in Blackwell, Oklahoma, they are likely to be odorless and tasteless.

128.   Defendants admit that the International Agency for Research on Cancer ("IARC"), the United States Department of Health and Human Services ("DHHS"), and the United States Environmental Protection Agency ("EPA") classify arsenic as a known human carcinogen for certain exposure pathways.   Defendants also admit that ingestion or inhalation of arsenic compounds can under specific circumstances lead to adverse health consequences, but that the assessment of exposure and toxicity of arsenic compounds is extremely complex and highly dependent on the arsenic compound involved, the dose, the route of exposure, the duration of exposure, the sensitivity of the particular individual as well as a multitude of other factors. Defendants deny the remaining allegations in paragraph 128.

129.   Defendants admit that IARC, DHHS, and EPA classify lead as a probable or reasonably anticipated human carcinogen (IARC for inorganic lead compounds only). Defendants also admit that ingestion or inhalation of lead compounds can under specific circumstances lead to adverse health consequences, but that the assessment of exposure and toxicity of lead components is extremely complex and highly dependent on the lead compound involved, the dose, the route of exposure, the duration of exposure, the sensitivity of the particular individual as well as a multitude of other factors. Defendants deny the remaining allegations in paragraph 129.

130.   Defendants admit that ingestion or inhalation of cadmium compounds can under specific circumstances lead to adverse health consequences, but that the assessment of exposure and toxicity of cadmium compounds is extremely complex and highly dependent on the cadmium compound involved, the dose, the route of exposure, the duration of exposure, the sensitivity of the particular individual as well as a multitude of other factors.  Defendants also admit that DHHS classifies cadmium as a known human carcinogen, the IARC classified cadmium as a human carcinogen, and EPA classifies cadmium as a probable human carcinogen.  Defendants deny the remaining allegations in paragraph 130.

131.   Defendants admit that ingestion or inhalation of zinc compounds can under specific circumstances lead to adverse health consequences, but that the assessment of exposure and toxicity of zinc compounds is extremely complex and highly dependent on the zinc compound involved, the dose, the route of exposure, the duration of exposure, the sensitivity of the particular individual as well as a multitude of other factors.  Defendants deny the remaining allegations in paragraph 131.

132.   Defendants deny the allegations in paragraph 132, except that Defendants admit that certain soil samples taken in 1991 and 1992 indicated that the soil in certain areas in the City of Blackwell contained zinc, arsenic, lead, and/or cadmium at concentrations above naturally occurring background levels.

133.   Defendants deny the allegations in paragraph 133.

134.    Defendants deny the allegations in paragraph 134, except that Defendants admit that the Centers for Disease Control and Prevention has established a reference level for pediatric blood lead levels of 5 µg/dL, but Defendants deny that this reference level is associated with a requirement for "case management."  Defendants also admit that lead exposure under certain specific conditions has been shown to be associated with some of the health conditions listed in footnote 1, but Defendants specifically deny that any such exposure conditions are applicable to Plaintiffs here and also deny that any such exposure conditions arose as a result of historical operation of the Blackwell Smelter. Defendants also deny that the cited blood lead statistics are an accurate description of the current blood lead data for the City of Blackwell.

135.    Defendants deny the allegations in paragraph 135, except that Defendants admit that (i) in or about 1992, the EPA suggested the possibility that the Blackwell Smelter site could in the future become a Superfund site and be placed on the National Priorities List ("NPL"), (ii) that BZC, the BIA, and the City of Blackwell thereafter entered into a Consent Agreement and Final Order (the "1992 CAFO") with the Oklahoma Department of Health (the predecessor to the ODEQ), the terms of which speak for themselves, addressing the environmental condition of the Smelter site. Defendants specifically deny that the 1992 CAFO did not include and was not applicable to private property.

136.    Admitted.

137.    Defendants admit that in April 1996, ODEQ issued a Record of Decision, Soil Remediation Unit (the "Soil ROD"), the terms of which speak for themselves. Defendants deny the remaining allegations in paragraph 137.

138.    Defendants deny the allegations in paragraph 138, except that Defendants admit that following the 1992 CAFO and 1994 Memorandum of Understanding ("MOU") between EPA and ODEQ, Cyprus Amax conducted a CERCLA-quality environmental investigation and remediation in the City of Blackwell on behalf of BZC under the oversight of ODEQ and EPA. Defendants specifically deny that they refused to conduct remediation on Plaintiffs' properties in accordance with the requirements of the Soil ROD.

139.    The allegations contained in paragraph 139 are legal conclusions and accordingly do not require a response.

140.    In response to paragraph 140, Defendants repeat their responses to paragraphs 1 through 139.

141.    Defendants admit that Plaintiffs purport to seek to certify a class of plaintiffs, but deny that class action certification or treatment is appropriate under either Oklahoma or federal law.

142.    Defendants deny the allegations in paragraph 142.

143.    Paragraph 143 further describes the class that Plaintiffs seek to represent and does not require a response by Defendants. To the extent a response is required,

Defendants deny that class certification is appropriate under either Oklahoma or federal law, and specifically deny that the listed questions include an accurate recitation of the facts underlying Plaintiffs' claims, that such questions are "common" to the alleged class, and that common questions predominate over questions affecting only individual class members.

144.   Defendants deny the allegations in paragraph 144.

145.   Defendants deny the allegations in paragraph 145, except that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to whether Helen Briggs, in her capacity as representative of the putative class, has interests antagonistic to, or in conflict with, other members of the putative class.

146.   Defendants deny the allegations in paragraph 146.

147.   Defendants deny the allegations in paragraph 147.

148.   Plaintiffs' anticipation does not require a response.  However, to the extent a response is required, Defendants deny that there will not be any difficulty in the management of this litigation as a class action.

149.   In response to paragraph 149, Defendants repeat their responses to paragraphs 1 through 148.

150.   Defendants deny the allegations in paragraph 150.

151.    Defendants deny the allegations in paragraph 151.

152.    Defendants deny the allegations in paragraph 152.

153.    Defendants deny the allegations in paragraph 153.

154.    In response to paragraph 154, Defendants repeat their responses to paragraphs 1 through 153.

155.    Defendants deny the allegations in paragraph 155.

156.    Defendants deny the allegations in paragraph 156.

157.    Defendants deny the allegations in paragraph 157.

158.    Paragraph 158 cites a statute and accordingly does not require a response.

159.    Defendants deny the allegations in paragraph 159.

160.    In response to paragraph 160, Defendants repeat their responses to paragraphs 1 through 159.

161.    Defendants deny the allegations in paragraph 161.

162.    Defendants deny the allegations in paragraph 162.

163.    Defendants deny the allegations in paragraph 163.

164.    Defendants deny the allegations in paragraph 164.

165.    In response to paragraph 165, Defendants repeat their responses to paragraphs 1 through 164.

166.    Defendants deny the allegations in paragraph 166.

167.    Defendants deny the allegations in paragraph 167.

168.    Defendants deny the allegations in paragraph 168.

169.    Defendants deny the allegations in paragraph 169.

170.    Defendants deny the allegations in paragraph 170.

171.    In response to paragraph 171, Defendants repeat their responses to paragraphs 1 through 170.

172.    Paragraph 172 contains a legal conclusion and accordingly does not require a response.   To the extent a response is required, Defendants deny the allegations in paragraph 172.

173.    Defendants deny the allegations in paragraph 173.

174.    Defendants deny the allegations in paragraph 174.

175.    Defendants deny the allegations in paragraph 175.

176.    Defendants deny the allegations in paragraph 176.

177.    In response to paragraph 177, Defendants repeat their responses to paragraphs 1 through 176.

178.   Defendants deny the allegations in paragraph 178.

179.   Defendants deny the allegations in paragraph 179.

180.   Defendants deny the allegations in paragraph 180.

181.   Defendants deny the allegations in paragraph 181.

182.   Defendants deny the allegations in paragraph 182.

183.   In response to paragraph 183, Defendants repeat their responses to paragraphs 1 through 182.

184.   Defendants deny the allegations in paragraph 184.

185.   Defendants deny the allegations in paragraph 185.

Defendants deny that Plaintiffs have statutory environmental claims that may be reserved.

## JURY DEMAND

Defendants demand a trial by jury on all issues so triable.

### DEFENDANTS' ADDITIONAL STATEMENTS AND DEFENSES

Defendants, having fully answered Plaintiffs' Complaint, further answer, allege, and state as follows:

1.   The Complaint fails to state a claim upon which relief may be granted.

2.      Some of the Plaintiffs do not own or have any possessory interest in property where they are living, and thus have no standing to pursue the claims asserted in the Complaint.

3.      Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations, including, without limitation, 12 O.S. §§ 95(A)(2)-(A)(3).  Plaintiffs cannot avoid the limitations bar because, among other reasons, they have not suffered any legally compensable injury within the applicable periods of limitations preceding the filing of this action; they possessed such information that should have caused them reasonably to inquire or further investigate the alleged contamination; Plaintiffs had knowledge of both the alleged existence and cause of injury (or sufficient knowledge that should have caused them reasonably to inquire or investigate further); and an allegedly ongoing public nuisance does not suspend the applicable limitations on a damages claim for such nuisance; and the alleged injury was already complete.

If the allegations contained in Plaintiffs' Original Complaint are taken as true (which Defendants deny), the Plaintiffs should have reasonably inquired or further investigated the condition of their properties.  For example:

- Plaintiffs' state that in 1942, "a lawsuit was filed alleging smoke, gas fumes, sulphur fumes, zinc fumes, and zinc deposits from the Smelter had a toxic effect on a farm located one-half miles from the Smelter, which rendered the land infertile at that time."  Original Complaint at ¶124, p. 28.

- Plaintiffs state that in the late 1960s, "a group of nearby farmers complained that their crops were increasingly unhealthy and unharvestable" due to "ongoing pollution from the Smelter."  *Id.* at ¶125, p. 28.

36

- Plaintiffs state that a lawsuit was filed in 1972 alleging that the Smelter caused "vast quantities" of emissions that damages the plaintiffs' land, crops, and property.  *Id.* at ¶126, p. 28.

- Plaintiffs state that the ODEQ recommended that residents not use the shallow groundwater in certain areas "due to the elevated levels of zinc, arsenic, lead, and/or cadmium."  Plaintiffs' *Id.* at ¶120, p. 27.

- Plaintiffs state that in February 1972, BZC announced that the Smelter faced possible closure due to "pollution problems."  *Id.* at ¶122, p. 27.

- Plaintiffs state that at the time of the Smelter's closure in 1972, BZC stated publicly that "additions of costly equipment to meet pending environmental control regulations cannot be economically justified."  *Id.*

- Plaintiffs state that soil samples taken in 1991 and 1992 establish the soil surrounding the Smelter contained heavy metals at concentrations greater than three times background concentration and greater than their respective sample quantitation limits.  *Id.* at ¶132, p. 29.

- Plaintiffs state that in 1992 "the EPA evaluated whether the Smelter should be placed on the National Priorities List as a Superfund site."  *Id.* at ¶135, p. 30.

- Plaintiffs state that on April 4, 1996, "the ODEQ issued its Record of Decision" . . . "requiring soil remediation on the Blackwell Zinc Site."

Under Plaintiffs' own theory, Plaintiffs had knowledge of the existence and cause of injury, or sufficient knowledge that should have caused them to inquire or further investigate the presence, if any, of Smelter byproducts on Plaintiffs' properties more than two years before this suit was filed.

4.     Plaintiffs' claims are barred by the doctrines of laches and estoppel.  Plaintiffs' allegations discussed above in paragraph 3, *supra*, that should have caused Plaintiffs reasonably to inquire or further investigate the alleged contamination for statute of

limitations purposes also demonstrate that Plaintiffs' claims should be barred under the equitable defenses of laches and estoppel.

5.      Plaintiffs' alleged damages, if any, may have been caused or contributed to by their own conduct and/or negligence or that of other persons or entities who are not parties hereto, including without limitation Plaintiffs' placement and use of Smelter-related materials and sources of contamination such as deteriorating or improperly managed lead-based paint or leaded gasoline.    According to the United States Environmental Protection Agency:

> Old lead-based paint is the most significant source of lead exposure in the U.S. today.  Most homes built before 1960 contain heavily leaded paint.  Some homes built as recently as 1978 may also contain lead paint.  This paint could be on window frames, walls, the outside of homes, or other surfaces.  Harmful exposures to lead can be created when lead-based paint is improperly removed from surfaces by dry scraping, sanding, or open-flame burning.

http://www.epa.gov/iaq/homes/hip-lead.html.    This information, and much more information concerning lead-based paint in residential housing, including information on how to reduce exposure to lead-based paint and federal regulations for the removal of lead-based paint by contractors, is publicly available on the EPA's website.  *See id.*, and http://www.epa.gov/lead, and multiple informational links contained therein.  The real property records maintained in the Kay County Appraisal District indicate that many of the homes owned by the Plaintiffs were constructed prior to 1960.  As a result, these properties likely contain lead originating from lead-based paint applied to these structures.

Plaintiffs' claims are barred, in whole or in part, by their own proportionate responsibility, contributory or comparative negligence, fault, or failure to exercise ordinary care, and Plaintiffs' recovery, if any, must be reduced in proportion to the percentage of responsibility of Plaintiffs.

6.    If Plaintiffs incurred any damages, which Defendants deny, such damages, if any, are the result of an independent, intervening and superceding cause, including without limitation sources of contamination such as deteriorating or improperly managed lead-based paint or leaded gasoline, and movement, transportation, or placement of Smelter-related material by Plaintiffs or third parties.  *See supra* ¶ 5.  Consequently, Plaintiffs are barred from any recovery from Defendants.

7.    Plaintiffs' claims are barred, in whole or in part, because of their failure to mitigate their alleged losses or damages, including but not limited to failure to provide Defendants with access to their property for sampling and potentially remediation, and failure to properly manage or replace sources of contamination such as lead-based paint or leaded gasoline.

8.    Plaintiffs' claims are barred, in whole or in part, under the common law doctrine of coming to the nuisance. Plaintiffs are alleged to be property owners in Blackwell, Oklahoma. Original Complaint at ¶¶10-110, pp. 8-23.  Plaintiffs Original Complaint contains allegations of the types of information regarding alleged contamination (*see supra* ¶ 3) that was available to the public as early as 1942 – many years before Plaintiffs purchased their properties.  Under their own allegations, Plaintiffs

should have reasonably inquired or investigated further the alleged contamination in Blackwell before purchasing their properties.

9.      All or a portion of Plaintiffs' claims may be barred by the doctrines of release, discharge, and/or offset, including without limitation Defendants' environmental remediation.

10.      To the extent the proposed class in the instant case includes persons who were Settlement Class Members, as defined by the Class Settlement Agreement and General Release and by the Order Granting Final Approval of Settlement, Approving Fees and Expenses, and Directing Entry of final Judgment and Dismissal with Prejudice, in the Oklahoma state action styled *Coffey et al. v. Freeport-McMoRan Copper & Gold Inc., et al.*, No. CJ-2008-68, In the District Court of Kay County, Oklahoma, such persons are barred from asserting the claims pleaded against Defendants in the instant action.  Such claims are encompassed within the Released Claims in the *Coffey v. Freeport-McMoRan Copper & Gold Inc.* action, and as a result, such persons are barred from asserting the claims pleaded in the instant action by the doctrines of release, discharge, and res judicata.  In addition, the Order Granting Final Approval of Settlement, Approving Fees and Expenses, and Directing Entry of final Judgment and Dismissal with Prejudice in the *Coffey v. Freeport-McMoRan Copper & Gold Inc.* action forever barred and permanently enjoined such persons from "starting, continuing, or participating in, litigating or receiving any benefits or other relief" from Defendants based on the Released Claims. As a result, such persons cannot assert, in an individual capacity, the claims pleaded

against Defendants in the instant action.  Nor can such persons assert such claims against Defendants as members of the class proposed in the instant action, because (1) such claims would also be barred by the doctrines of release, discharge, and res judicata, and (2) the above-referenced *Coffey* Order Granting Final Approval specifically barred such persons from "bringing a new class action" such as the instant putative class action.

11.    The proposed class in the instant action includes persons who were parties to, and who asserted the same claims in the *Coffey v. Freeport-McMoRan Copper & Gold Inc.* action, which was resolved by class settlement.  To the extent that the proposed class in the instant action includes persons who were proposed class members in the *Coffey v. Freeport-McMoRan Copper & Gold Inc.* action but who opted out from that proposed class, such opt-out members are precluded from participating in a second class action in which the same claims are asserted, and are therefore precluded from participating in the proposed class action in this Court.

12.    Plaintiffs' claims require Defendants to meet conflicting obligations under federal and state law (including without limitation the Comprehensive Environmental Response, Contamination, and Liability Act ("CERCLA") and other applicable federal and state environmental laws); and constitute an invalid burden on interstate commerce, violating the Supremacy and Commerce clauses of the United States Constitution, Article VI, § 2 and Article I, Section 8, respectively. Plaintiffs' claims are barred, in whole or in part, because at all relevant times Defendants have acted in a manner consistent with then

existing and reasonably available technological, scientific and industrial state-of-the-art, as well as all applicable governmental regulations, oversight and decrees.

13.     Plaintiffs have no claim for joint and several liability.  While Defendants deny that Plaintiffs have suffered any injuries or damages, to the extent Plaintiffs establish injury, it is divisible and the Defendants' liability, if any, is several.

14.     Plaintiffs' Complaint fails to state facts sufficient to entitle Plaintiffs to any award of punitive damages against any Defendant.  Moreover, because of the lack of clear standards, the imposition of punitive damages against any Defendant is unconstitutionally vague and/or overbroad.

15.     Plaintiffs' claims for punitive damages are barred or limited by 23 O.S. § 9.1.

16.     Plaintiffs' claims for punitive damages cannot be maintained as a matter of law because, among other items, an award of punitive damages would contravene Defendants' rights under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution, as well as the Equal Protection Clause; the Excessive Fines Clause of the Eighth Amendment of the United States Constitution; the Double Jeopardy Clause in the Fifth Amendment to the Constitution of the United States and the correlative provisions of the Oklahoma Constitution, including any:

        a.  imposition of punitive damages by a jury which:

    i.  is not provided with standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damages award;

    ii.  is not adequately and clearly instructed on the limits on punitive damages imposed by the principles of deterrence and punishment;

    iii.  is not expressly prohibited from awarding punitive damages, or determining the amount of an award thereof, in whole or in part, on the basis of invidiously discriminatory characteristics, including the corporate status, wealth, or state of residence of Defendants;

    iv.  is permitted to award punitive damages under a standard for determining liability for such damages which is vague and arbitrary and does not define with sufficient clarity the conduct or mental state which makes punitive damages permissible; and

    v.  is not subject to trial court and appellate judicial review for reasonableness and the furtherance of legitimate purposes on the basis of objective standards.

b.  imposition of such punitive damages, and determination of the amount of an award thereof, where applicable law is impermissibly vague, imprecise, or inconsistent;

c.  imposition of such punitive damages, and determination of the amount of an award thereof, in a way that subjects Defendants to impermissible multiple punishment for the same alleged wrong.

17.  If Plaintiffs' claims for punitive damages seek recovery for punitive damages as punishment for conduct that occurred outside of the State of Oklahoma's borders, such an imposition of punitive damages would violate the Defendants' rights under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution, as well as the correlative provisions of the Oklahoma Constitution. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003); BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 572-73 (1996).

18.  Plaintiffs' claims are subject to the requirement of election of remedies.

19.  Should any Defendant be held liable to Plaintiffs, which liability is specifically denied, such Defendant would be entitled to a set off and credit for the total of all amounts recovered by, paid to, or otherwise received by Plaintiffs (including the benefits of any specific performance) from Defendants and all collateral sources.

20.  Plaintiffs' nuisance claims are barred, in whole or in part, by Defendants' performance of environmental remediation, including but not limited to environmental remediation performed under the express authority of a statute. *See* 50 Okla. Stat. § 4. Relevant environmental statutes and regulatory authority include, but are not limited to,

75 O.S. § 309(d) (1992); 63 O.S. 1981 §§1-101 et seq. (1992); 75 O.S. § 309(E) (1992); and 27A O.S. §§ 2-6-101 et seq., 2-7-101 et seq., 2-3-202(A)(10), and 2-10-101 (2000).

21.    Any Plaintiff that acquired property after the alleged harm to the property occurred has no standing to bring claims for damage to such property acquired after the alleged harm to the property occurred, because any claims for damage to property belonged only to the landowner who owned the property when the alleged injury occurred and the right to file suit does not pass to a subsequent purchaser.

22.    Plaintiffs' claims for equitable relief may be barred because, to the extent Plaintiffs establish they are entitled to recovery based on any other theory of liability asserted in their Complaint, which Defendants expressly deny, Plaintiffs have an adequate remedy at law and barred from receiving equitable relief.

23.    Plaintiffs have no special damages as are required for a claim of public nuisance.

24.    No Defendant other than BZC operated the Smelter at any time, and Plaintiffs cannot establish liability on any other Defendant for alleged operational activities at the Smelter.

WHEREFORE, Defendants pray for relief and judgment against Plaintiffs as follows:

A.    That Plaintiffs taking nothing by reason of the Complaint;

B.      That this action be dismissed with prejudice;

C.      That Defendants recover their costs and attorneys' fees incurred in

connection with this action; and

D.      For such other relief as is proper.

Respectfully submitted,

*s/Reid E. Robison*

Reid E. Robison, OBA # 7692
Timothy J. Bomhoff, OBA #13172
MCAFEE & TAFT A PROFESSIONAL
CORPORATION
Two Leadership Square
211 North Robinson Avenue, Suite 1000
Oklahoma City, Oklahoma 73102-7103
reid.robison@mcafeetaft.com
(405) 235-9621
(405) 235-0439 Facsimile

**ATTORNEYS FOR DEFENDANTS
FREEPORT-MCMORAN COPPER
& GOLD INC.; FREEPORT-
MCMORAN CORPORATION
(F/K/A PHELPS DODGE
CORPORATION);
CYPRUS AMAX MINERALS
COMPANY; AND BLACKWELL
ZINC COMPANY, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2013, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Krystina E. Phillips
Dallas L.D. Strimple
ENVIRONMENTAL LAW CENTER
1723 East 15th Street, Suite 100
Tulsa, Oklahoma 74104
Telephone: (918) 347-6169
Facsimile: (918) 398-0514

Ryan Ellis
THE LAW OFFICES OF TRAE GRAY, PLLC
28 North Main
Coalgate, Oklahoma 74538
Telephone: (580) 927-2314
Facsimile: (580) 927-2315

***ATTORNEYS FOR PLAINTIFFS***

*s/ Reid E. Robison*