IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

HELEN BRIGGS, *et al.*,  )
                         )
         Plaintiffs,     )
                         )
v.                       )   Case No. CIV-13-1157-M
                         )
FREEPORT-MCMORAN COPPER  )
& GOLD, INC., *et al.*,  )
                         )
         Defendants.     )

**ORDER**

Before the Court is Defendants' Motion to Dismiss Portions of Plaintiffs' First Amended Complaint ("Fir. Am. Compl.") Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Brief in Support, filed July 7, 2014. On August 18, 2014, plaintiffs responded, and on August 25, 2014, defendants replied. Based on the parties' submissions, the Court makes its determination.

I. <u>Introduction</u>[1]

This action stems from plaintiffs' allegations of continuous and ongoing pollution and contamination in and around the City of Blackwell, Kay County, Oklahoma.[2] Plaintiffs allege the pollution emanates from the Blackwell Zinc Smelter ("Blackwell Smelter"), which plaintiffs allege defendants own.[3] The Blackwell Smelter began operations in 1916, and ceased operations

---

[1] All factual allegations set forth are taken from plaintiffs' Fir. Am. Compl. [docket no. 65].

[2] Plaintiffs consist of over 100 residents who are landowners in and around Blackwell, Oklahoma.

[3] During the operational period of the Blackwell Smelter, the Smelter was owned and operated by defendant Blackwell Zinc Company, Inc. ("BZC"). Plaintiffs allege:

> 116. [BZC]. . . is a wholly owned subsidiary of Defendant Cyprus Amax [Minerals Company], which is a wholly owned subsidiary of Defendant [Freeport-McMoran Corporation] (formerly Phelps Dodge Corporation), which

1

on May 17, 1972. Plaintiffs allege that the Blackwell Smelter has continued to spread pollution throughout Blackwell from the beginning of its operations until today. Plaintiffs further allege that smelters, like the Blackwell Smelter, can cause air-polluting emissions and that defendants operated the Blackwell Smelter with no emission controls. In their First Amended Complaint, plaintiffs allege:

> Some of Defendants' pollution was placed directly on the Plaintiffs' properties. In other cases, the blowing of the wind picks up Defendants' pollution and distributes it on Plaintiffs' properties. . [sic] These pollutants contained considerable amounts of arsenic, lead, cadmium, zinc and other heavy metals. Defendants' holding areas and slag ponds were unlined and, as a result, heavy metals, such as zinc, lead, arsenic, and cadmium, contaminated the soils and leached into the groundwater.

Fir. Am. Compl. ¶ 122. Plaintiffs further allege:

> 117. Defendants as landowners of land that is continuing to cause a trespass and nuisance to the Plaintiffs [sic] lands are jointly and severally, as agents for one another, and/or as alter egos of one another, and as corporate successors of one another, and responsible for the pollution, obligations, cleanup, and liabilities resulting from the continuing pollution of the Plaintiffs [sic] properties in and around Blackwell, Oklahoma.

Fir. Am. Compl ¶ 117.

As a result of defendants' alleged actions, plaintiffs now seek actual and punitive damages for (1) trespass; (2) private nuisance; (3) public nuisance; (4) negligence; (5) negligence *per se*; and (6) unjust enrichment. Defendants, pursuant to Federal Rule of Civil Procedure 12(b)(6), move this Court to dismiss plaintiffs' claims for trespass, private nuisance, public nuisance, negligence, and negligence *per se* against defendants Freeport McMoRan Copper & Gold ("FCX"), Freeport Minerals Corporation (f/k/a Freeport-McMoRan Corporation, f/k/a

---

is a wholly owned subsidiary of Defendant Freeport-McMoRan [Copper & Gold Inc.].

Fir. Am. Compl. ¶116.

Phelps Dodge Corporation) ("FMC"), and Cyprus Amax Minerals Company ("Cyprus Amax") (collectively known as the "Non-BZC Defendants") and dismiss plaintiffs' claim for unjust enrichment against all defendants, including BZC.

II.     Standard of Dismissal

Regarding the standard for determining whether to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal quotations and citations omitted). Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* at 678 (internal quotations and citations omitted). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Finally, "[a] court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true

and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

III.    Discussion

Defendants assert that plaintiffs have failed to plead sufficient allegations to state a plausible claim that: (1) the Non-BZC Defendants are directly liable to plaintiffs; (2) the Non-BZC Defendants are agents of BZC; and (3) the Non-BZC Defendants are the alter egos of BZC. Further, defendants assert that plaintiffs' unjust enrichment claims against all defendants should be dismissed since plaintiffs have an adequate remedy at law.

A.    Direct Liability

Defendants assert that plaintiffs' claims of trespass, private nuisance, public nuisance, negligence, and negligence *per se* are not plausible against the Non-BZC Defendants because these claims stem from the operation of the Blackwell Smelter and the Non-BZC Defendants had no interest in the Blackwell Smelter when it was in operation. Plaintiffs contend that "[t]his suit arises from the *ongoing* pollution and contamination of Plaintiffs' properties from the Blackwell Zinc Smelter." Plfs.' Resp. at 6.

Trespass involves an actual physical invasion of the real estate of another without the permission of the person lawfully entitled to possession. *Williamson v. Fowler Toyota, Inc.*, 956 P.2d 858, 862 (Okla. 1998). In their First Amended Complaint, plaintiffs allege:

> 155.    Defendants intentionally and continuously or intermittently caused a trespass to Plaintiffs' properties by releasing and dispersing toxic and harmful substances throughout Blackwell and have caused and will continue to cause an actual, physical, invasion of and interference with Plaintiffs' property interest. Defendants' release of toxic harmful substances is a direct and proximate cause of Plaintiffs' injuries and damages.

Fir. Am. Compl. ¶ 155.  Plaintiffs further allege a private nuisance as follows:

4

> Every successive owner of property who neglects to abate a continuing nuisance upon, or in the use of such property, created by a former owner, is liable therefor in the same manner as the one who first created it. 50 Okla. Stat. § 5. Defendants are currently owners and operators of property in the Blackwell area that is causing a nuisance to the Plaintiffs. For instance, the smelter site, part of which is titled in the name of Cyprus Amex, continues to emit pollutants into the Plaintiffs' groundwater. . . .

Fir. Am. Compl. ¶ 163 (internal quotations omitted). In addition, plaintiffs allege that "[d]efendants' unlawful conduct in connection with the wide-spread dispersion of pollution in Blackwell, including the pollution of the Plaintiffs' properties in excess of that allowed by law constitutes a public nuisance in violation of 50 Okla. Stat. § 2"[4]. *Id*. ¶ 166. Lastly, plaintiffs' negligence and negligence *per se* claims allege:

> 171. Plaintiffs have been injured as a direct result of Defendants' unlawful dispersion of toxic and harmful pollutants.
>
> 172. Defendants owe Plaintiffs a duty to not allow pollutants, such as zinc, arsenic, cadmium, and lead, to be released onto Plaintiffs' homes, land and properties.

and

> 178. As a direct result of Defendants [sic] actions throughout Blackwell, air pollutants were released in violation of Oklahoma Law, and Plaintiffs were and continue to be forced to breathe, touch, ingest and be covered in pollution caused by Defendants.

*Id.* ¶¶ 171, 172, and 178.

---

[4] Okla. Stat. tit. 50, § 2 provides:
> A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal.

Okla. Stat. tit. 50, § 2.

5

Having carefully reviewed Plaintiffs' First Amended Complaint, and presuming all of plaintiffs' factual allegations are true and construing them in the light most favorable to plaintiffs, the Court finds that plaintiffs have pled sufficient facts to state a plausible claim against the Non-BZC Defendants for direct liability with respect to plaintiffs' claims of trespass, private nuisance, public nuisance, negligence, and negligence *per se*. The Non-BZC Defendants adamantly contend that the material released from the Blackwell Smelter and damage to plaintiffs' properties occurred prior to the Non-BZC Defendants having any interest in the Blackwell Smelter and, therefore, the Non-BZC Defendants are not directly liable for the alleged tortious conduct to plaintiffs' properties. However, plaintiffs contend that the pollution is continuous and ongoing and that defendants, including the Non-BZC Defendants, as the current landowners are directly liable for the pollution that continues to occur from the Blackwell Smelter. The Court finds that plaintiffs' specific allegations that "[d]efendants admit the soil and/or shallow groundwater in certain areas of the City of Blackwell contains elevated levels of zinc, arsenic, lead, and/or cadmium caused by Defendants past and continuing release, distribution and re-distribution of pollutants" and that "[c]hildren in Blackwell continue to have elevated blood lead levels as a result of the widespread dispersion of pollutants from Defendants' Smelter" are particularly important and plausible. Fir. Am. Compl. ¶ 122 and ¶ 137. Therefore, plaintiffs' claims of trespass, private nuisance, public nuisance, negligence, and negligence *per se*, at this stage of the litigation, should not be dismissed.

B.  Agency

"An agency relationship generally exists if two parties agree one is to act for the other." *McGee v. Alexander*, 37 P.3d 800, 807 (Okla. 2001) (internal citation omitted). "An essential element of an agency relationship is that the principal has some degree of control over the

conduct and activities of the agent." *Id.* Further, "[i]t is not necessary that the parties intend to create the legal relationship or to subject themselves to the liabilities which the law imposes upon them as a result of it." *Farmers Nat'l. Grain Corp. v. Young*, 102 P.2d 180, 185 (Okla. 1940). Defendants assert that plaintiffs have not sufficiently pled an agency theory of liability. Specifically, defendants contend that plaintiffs have failed to show how the Non-BZC Defendants exercised control over BZC, or how BZC exercised any control over the Non-BZC Defendants.

Having carefully reviewed Plaintiffs' First Amended Complaint, and presuming all of plaintiffs' factual allegations are true and construing them in the light most favorable to plaintiffs, the Court finds that plaintiffs have pled sufficient facts to support their claim that the defendants are agents of each other. Plaintiffs specifically allege that the Non-BZC Defendants:

> [A]ctively performs, directs to be performed, or causes to be performed, individually and through its corporate affiliates/subsidiaries, all obligations of Defendant Blackwell Zinc Company, Inc. related to the Smelter and, through its actions, accepts responsibility for all cleanup, remediation, and liabilities associated with the historic operation of the Smelter.

Fir. Am. Compl. ¶¶ 113 – 115. Defendants contend that plaintiffs have failed to allege sufficient facts to show that either BZC agreed to act for the Non-BZC Defendants or that the Non-BZC defendants have exercised any degree of control over the relevant conduct and activities of BZC. However, "[t]he existence of an actual agency relationship is not a prerequisite to establishing [an] apparent [agency] [relationship]." *Thorton v. Ford Motor Co.*, 297 P.3d 413, 420 (Okla. Civ. App. 2012).

> Apparent [agency] results from a manifestation by the principal to a third person that another is his agent. The principal's manifestation may be made directly to a third person or to the community by signs or by advertising.

7

*Id.* at 41. In addition to the factual allegations cited previously in this Order, plaintiffs also allege that some of the Non-BZC defendants on behalf of BZC have made statements about the Blackwell Smelter closing (*see* Fir. Am. Compl. ¶ 124), paid debts of defendants to plaintiffs in other litigation surrounding the Blackwell Smelter (*see* Fir. Am. Compl. ¶ 126), and "accepted responsibility for the pollution in Blackwell, including the pollution on the Plaintiffs' properties." Fir. Am. Compl. ¶ 142. These factual allegations create the appearance that the element of control is present between the Non-BZC Defendants and BZC, thus establishing, if not an actual agency relationship, an apparent agency relationship between the defendants. Therefore, plaintiffs' claim of an agency relationship between the defendants should not be dismissed.

C. Alter Ego Theory

Defendants assert that plaintiffs have failed to plead a sufficient alter ego theory of recovery against the Non-BZC Defendants. Defendants assert that since BZC is a New York Corporation, New York alter ego law applies.[5] "[P]iercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Morris v. N.Y. State Dep't. of Taxation and Fin,.* 82 N.Y. 2d 135, 141 (N.Y. 1993). Domination is determined by:

---

[5] Defendants call the Court's attention to *Bd. of Cnty. Comm'rs of the Cnty. of Kay, Okla. v. Freeport-McMoRun Cooper & Gold, Inc.,* No. CIV-12-601-C , at 6 (W.D. Okla. Sept. 5, 2013) in which the court determined that since BZC was incorporated in New York, New York alter ego theory applies in determining if BZC's corporate veil should be pierced. Plaintiffs contend that the court's decision in *Kay County* was discretionary and that this Court should apply Oklahoma law to determine if BZC's corporate veil should be pierced. For purposes of this instant Order, and for reasons set forth in *Kay County*, this Court will apply New York alter ego law to determine if BZC's corporate veil should be pierced.

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Peery v. United Capital Corp.*, 84 A.D.3d 1201, 1202 (N.Y. App. Div. 2011) (internal quotations and citations omitted). Defendants assert that plaintiffs have failed to allege the factors necessary to show that the Non-BZC Defendants dominated BZC and, therefore, were BZC's alter egos. Defendants further contend that plaintiffs have also failed to allege a fraud or wrong committed by the Non-BZC Defendants since the Non-BZC Defendants did not become a part of the same corporate family until years after the Blackwell Smelter operations had ceased.

Having carefully reviewed Plaintiffs' First Amended Complaint, and presuming all of plaintiffs' factual allegations are true and construing them in the light most favorable to plaintiffs, the Court finds that, all be it barely, plaintiffs have sufficiently pled an alter ego theory claim against defendants. As the Court cited previously in this Order, plaintiffs allege:

> 116. [BZC]. . . is a wholly owned subsidiary of Defendant Cyprus Amax [Minerals Company], which is a wholly owned subsidiary of Defendant [Freeport-McMoran Corporation] (formerly Phelps Dodge Corporation), which is a wholly owned subsidiary of Defendant Freeport-McMoRan [Copper & Gold Inc.].

Fir. Am. Compl. ¶116. Further, plaintiffs specifically allege:

> Upon information and belief, all the Defendants are dominated by Freeport-McMoRan. Upon information and belief, there is not adequate capitalization of the defendants to pay a judgment in this case; indeed none of the other Defendants operate independently. All operations in Blackwell are controlled by a hand full of Freeport-McMoRan employees. Upon information and belief, Freeport McMoRan has accepted responsibility for the pollution in Blackwell. That pollution is causing injury to the Plaintiffs and their properties. Upon information and belief, Freeport-McMoRan has paid the debts of the other Defendants, including, for instance the debts of the other Defendants relating to the Coffey litigation and debts relating to continued cleanup liabilities in the Blackwell area. Upon information and belief, Cyprus Amex' [sic] purchase and control of property in the area where the smelter was located was directed and controlled by Freeport-McMoRan.

Fir. Am. Compl. ¶ 126. Defendants contend that plaintiffs have alleged domination in a conclusory fashion; however, the Court finds that plaintiffs have alleged facts specific enough, at this stage in the litigation, to allow the Court to draw the reasonable inference that the Non-BZC Defendants exerted dominance over BZC. Further, the Court has already found that plaintiffs' claims for direct liability against the Non-BZC Defendants should not be dismissed; so, therefore, plaintiffs have sufficiently alleged a wrong committed by the Non-BZC Defendants. Accordingly, for the reasons stated above, plaintiffs' alter ego claims should not be dismissed.

### D. Unjust Enrichment

The long-standing rule in Oklahoma is that a plaintiff may not pursue an equitable remedy when the plaintiff has an adequate remedy at law. *Krug v. Helmerich & Payne, Inc.,* 320 P.3d 1012, 1022, (Okla. 2013) (citing *Harvell v. Goodyear Tire and Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2006)). Further, "[w]here a party has an adequate remedy at law for breach of contract or negligence, regardless of whether the party actually recovers thereon, the party may not pursue a claim for unjust enrichment." *Naylor Farms, Inc. v. Anadarko OGC Co.,* No. CIV-

08-668-R, 2011 WL 7267851, at *1 (W.D. Okla. June 15, 2011). *See also Hydro Turf, Inc. v. Int'l. Fid. Ins. Co.*, 91 P.3d 667, 673 (Okla. Civ. App. 2004).

Defendants contend that plaintiffs' unjust enrichment claim should be dismissed because plaintiffs have an adequate remedy at law since plaintiffs have asserted a negligence claim against BZC. Plaintiffs contend that "while the Defendants' [sic] may at some point in the litigation be correct that Plaintiffs should elect between their equitable remedies and their legal ones, the time for that election has not yet arrived." Plfs.' Resp. at 9. Having carefully reviewed Plaintiffs' First Amended Complaint, and presuming all of plaintiffs' factual allegations are true and construing them in the light most favorable to plaintiffs, the Court finds that, at this stage of the litigation, plaintiffs have the right to plead alternative theories of recovery and, therefore, plaintiffs' unjust enrichment claim should not be dismissed.

IV. Conclusion

Accordingly, for the reasons set forth above, the Court DENIES Defendants' Motion to Dismiss Portions of Plaintiffs' First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Brief in Support [docket no. 66].

**IT IS SO ORDERED this 30th day of March, 2015.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE