UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **HELEN BRIGGS et al.,** ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. CIV-13-1157-G |
| ) | |
| **FREEPORT-MCMORAN COPPER** ) | |
| **& GOLD, INC., et al.,** ) | |
| ) | |
|     **Defendants.** ) | |

## OPINION AND ORDER

Now before the Court is Defendants' Motion for Summary Judgment (Doc. No. 168). Plaintiffs have responded in opposition (Doc. No. 176), and Defendants have replied (Doc. No. 180). After carefully considering the parties' arguments, the relevant authorities, and the evidentiary materials submitted pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court determines that Defendants' Motion should be granted.

This lawsuit was filed by a putative class of property owners to recover for damages allegedly sustained as a result of pollutants emitted by the Blackwell Zinc Smelter in Blackwell, Oklahoma. *See* Am. Compl. (Doc. No. 65). The parties agree that the claims at issue are identical to those asserted in an earlier class action filed in the District Court of Kay County, Oklahoma. *See* Op. Br. (Doc. No. 168) at 8, 15-19; Resp. Br. (Doc. No. 176) at 8-9, 13.[1] The earlier lawsuit—styled *Bob Coffey, et al. v. Freeport-McMoRan Copper & Gold Inc., et al.*, No. CJ-2008-68 (Kay Cty. Dist. Ct. filed Apr. 14, 2008) (the "*Coffey*

---

[1] Citations to documents filed with the Court use the page numbers assigned by the Court's electronic filing system.

1

Litigation")[2]—was resolved by settlement of the parties, which was converted to judgment on March 26, 2012 (the "*Coffey* Judgment"). *See* Ex. 4 to Op. Br. (Doc. No. 168-4). The parties agree that the *Coffey* Judgment operates to bar the claims asserted in this lawsuit with respect to any owners of real property in the Class Area (defined below) who were not excluded from the *Coffey* settlement class.[3] *See* Op. Br. at 8, 15-19; Resp. Br. at 8-9, 13. The parties disagree, however, as to whether certain Plaintiffs—namely, Bradley Snow, Keyra Soto, and Sergio and Teresa Arteaga (collectively, "Remaining Plaintiffs")[4]—are subject to that bar.

As for Mr. Snow and Ms. Soto, a class action judgment may preclude a nonparty's subsequent civil claim when there is a "substantive legal relationship" between a party and the nonparty, such as "preceding and succeeding owners of property." *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (alteration and internal quotation marks omitted); *see also Hooks v. Rocket Oil Co.*, 1942 OK 324, 191 Okla. 431, 130 P.2d 846, 847. Because Mr. Snow and Ms. Soto each succeeded to property that was owned by a member of the *Coffey*

---

[2] Docket publicly available through http://www.oscn.net.

[3] The *Coffey* Judgment broadly releases all claims "whether known or unknown, past, present or future, suspected or unsuspected, contingent or non-contingent" that were "asserted in the [*Coffey*] Litigation . . . or that could have been asserted based upon, arising from, or related to the facts alleged in the [*Coffey*] Ligation." Ex. 4 to Op. Br. (Doc. No. 168-4), pp. 27-28 ¶ 36. Claims for personal injuries were not released. *Id.*

[4] Defendants additionally sought summary judgment on the claims of Plaintiffs Jesse Lively, Jared Wynn, Sean Sullivan, and Melody Sullivan. *See* Op. Br. (Doc. No. 168) at 6. However, the claims of these Plaintiffs were voluntarily dismissed, and judgment thereon was entered August 3, 2018. *See* Rule 54(b) Final Judgment as to All Claims of Voluntary Dismissal Plaintiffs (Doc. No. 183).

settlement class who was bound by the *Coffey* Judgment, they are bound by the *Coffey* Judgment.

As for the Arteagas, they are bound by the *Coffey* Judgment because the state court in *Coffey* determined that they were members of the *Coffey* settlement class. This Court has no authority to disturb that adjudication.

STANDARD OF REVIEW

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.*

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this initial burden, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (quoting Fed. R. Civ. P. 56(e)). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or
- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

SUMMARY OF UNDISPUTED FACTS

A. *The* Coffey *Litigation*

The *Coffey* Judgment defines the "Settlement Class" to include all persons who, as of December 19, 2011, owned real property within a geographical boundary defined as the "Class Area."[5] Ex. 4 to Op. Br. (Doc. No. 168-4) at 9-10. Putative class members were afforded an opportunity to "opt out" of the Settlement Class by submitting a written request for exclusion to a court-appointed "Settlement Administrator" on or before February 17, 2012. *See* Ex. 3 to Op. Br. (Doc. No. 168-3) at 12-13. As of March 12, 2012, the Settlement Administrator had received opt-out requests from 870 persons owning 819 properties

---

[5] This definition is subject to certain exceptions that are inapplicable here.

within the Class Area; however, 192 such forms were found to be deficient. Ex. 4 to Op. Br. (Doc. No. 168-4) at 22-23. The *Coffey* Judgment directed the Settlement Administrator to review the deficient opt-out forms, work with property owners to resolve curable deficiencies, and submit a final opt-out list to the court at a later date. *Id.* at 23-24. The Settlement Administrator was further ordered to accept, from property owners who had previously opted out, requests to rejoin the Settlement Class during a six-month "opt-back-in" period. *Id.* at 24. All owners of property within the Class Area who did not submit a written request for exclusion were "adjudged to be members of the Settlement Class" and thus "bound by [the] Final Judgment . . . ." *Id.*

On November 9, 2012, the Settlement Administrator submitted a preliminary opt-out list, along with an affidavit requesting guidance from the state court regarding the status of certain property owners whose requests for exclusion were deficient in some respect. *See* Ex. 15 to Reply Br. (Doc. No. 180-2). The court supplied such guidance in an order issued April 15, 2013. *See Coffey*, No. CJ-2008-68 (docket entry of April 15, 2013). As relevant here, the court ruled:

- that "[t]he status of property owners within the Class Area that both opted out and requested to be Class Members [was to] be determined . . . based upon the last timely-filed submission of intent received by the Settlement Administrator," with no consideration to be given to late filings; and

- that "[i]ndividuals or entities that own multiple properties within the Class Area that opted out of Class Membership with respect to some, but not all, of their properties . . . are Class Members and are bound by the Settlement [Agreement]" and the Court's Final Approval Order.[6]

---

[6] *See also* Ex. 3 to Op. Br. (Doc. No. 168-3) at 12-13, ¶ 5.2 ("A Settlement Class Member that owns multiple properties within the class must opt-out all properties or alternatively have all properties stay within the class . . . . In the event a Settlement Class member seeks

5

*Id.* at 2-3. The Court refers to these determinations, respectively, as "the Last Submission of Intent Rule" and the "Multiple Property Rule."

B. *Plaintiffs' Properties*

Bradley Snow owns one property within the Class Area: 203 W. Kansas, which he acquired from non-party Dennis Carruth <u>after</u> the December 19th cutoff date. *See* Ex. 5 to Resp. Br. (Doc 176-5). Keyra Soto owns two properties within the Class Area: (1) 213 E. Lincoln, which she acquired before the cutoff date; and (2) 214 E. Lincoln, which she acquired from non-party Sara Miller <u>after</u> the cutoff date. *See* Ex. 6 to Resp. Br. (Doc 176-6). Sergio and Teresa Arteaga jointly own three properties within the Class Area, all of which they owned on the cutoff date: (1) 311 E. College; (2) 323 W. Florence; and (3) 1222 W. Padon. *See* Ex. 3 to Resp. Br. (Doc. No. 176-3).

On July 17, 2013, the Settlement Administrator submitted an updated opt-out list (the "Final Opt-Out List"), which had been modified in accordance with the determinations in the state court's April 15, 2013 order. *See Coffey*, No. CJ-2008-68 (docket entry of July 17, 2013). The Final Opt-Out List <u>did not</u> include: (1) Keyra Soto or the property she owned on the December 19th cutoff date (213 E. Lincoln); (2) Sara Miller or the property she owned on the December 19th cutoff date but later transferred to Keyra Soto (214 E. Lincoln); or (3) Dennis Carruth or the property he owned on the December 19th cutoff date but later transferred to Bradley Snow (203 W. Kansas). *See id.* Ex. 9, at 2. The Final Opt-

---

to opt-out some properties and not others, the Parties will request that the Court deem all properties owned by the Settlement Class Member in question to have not properly opted out of the Class Settlement Benefits . . . .").

6

Out List did include the Arteagas and their three properties. *See id.* The court approved the Final Opt-Out List in an order dated August 19, 2013. *See* Ex. 8 to Resp. Br. (Doc. No. 176-8).

The version of the Final Opt-Out List that is attached to the court's August 19, 2013 order includes only one of the three properties owned by the Arteagas: 1222 W. Padon. However, the court expressly "approved" the Final Opt-Out List as submitted by the Settlement Administrator, and that list includes all three properties owned by the Arteagas. On February 6, 2014, the Settlement Administrator filed a motion to remove certain properties from the Final Opt-Out List, including, as relevant here, the Arteagas' property at 1222 W. Padon. *See* Ex. 11 to Op. Br. (Doc. No. 168-11). The Settlement Administrator explained that the 1222 W. Padon property had been "improperly" included on the Final Opt-Out List insofar as the Arteagas had submitted a claim form on July 17, 2012 (during the "opt-back-in" period) indicating their intent to rejoin the Settlement Class. *Id.* at 5. The Settlement Administrator submitted, and the court agreed, that the Arteagas were members of the Settlement Class by operation of the Last Submission of Intent Rule. *See id.*; Ex. 5 to Op. Br. (Doc. No. 168-5) at 2-3.

ANALYSIS

The doctrine of *res judicata* (*i.e.,* claim preclusion) prevents parties from relitigating claims that have been resolved by a final judgment on the merits. *Nat'l Diversified Bus. Servs., Inc. v. Corp. Fin. Opportunities, Inc.*, 1997 OK 36, 946 P.2d 662, 667.[7] The

---

[7] "The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute," 28 U.S.C. § 1738, which "directs a federal

7

doctrine applies where: (1) there is "an identity of subject matter, of the parties or their privies, of the capacity of the parties and of the cause of action"; (2) the court that rendered the judgment was "one of competent jurisdiction"; and (3) the judgment rendered was "on the merits of the case and not upon purely technical grounds." *Brady v. UBS Fin. Servs., Inc.*, 538 F.3d 1319, 1327 (10th Cir. 2008) (internal quotation marks omitted) (quoting *Carris v. John R. Thomas & Assocs.*, 896 P.2d 522, 527 (Okla. 1995)). Further, "the judgment must be final and not subject to reconsideration or amendment." *Id.*

The related doctrine of collateral estoppel (*i.e.,* issue preclusion) prevents parties from relitigating issues that have been finally determined in a previous suit. *Nat'l Diversified*, 946 P.2d at 667. This doctrine applies where: (1) "the party against whom it is being asserted was either a party to or a privy of a party to the prior action"; (2) the issue "has actually been adjudicated in the prior case"; (3) "the adjudicated issue was necessary and essential to the outcome of that prior case"; and (4) "the party against whom it is interposed had a full and fair opportunity to litigate the claim or critical issue." *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1186 (10th Cir. 2014) (internal quotation marks omitted) (quoting *Durham v. McDonald's Rests. of Okla., Inc.*, 2011 OK 45, ¶ 5, 256 P.3d 64, 66-67)).

While private settlements ordinarily have no preclusive effect, "[t]he process by which a class action settlement is approved has the effect of turning the private settlement

---

court to refer to the preclusion law of the State in which judgment was rendered." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Because the *Coffey* Judgment was issued by an Oklahoma court, the Court will apply the preclusion law of that State.

into . . . a judgment," which is preclusive for *res judicata* purposes. 6 Newberg on Class Actions § 18:19 (5th ed.); *see also Kuncl v. Int'l Bus. Machs. Corp.*, 660 F. Supp. 2d 1246, 1252 (N.D. Okla. 2009) ("*[R]es judicata* applies with equal force when the prior class action judgment was the result of a settlement."). Moreover, absent class members may be bound by a judgment or ruling even though they are technically non-parties to the action who did not have a "full and fair opportunity to litigate the claim or critical issue." *Knight*, 749 F.3d at 1186 (internal quotation marks omitted). This is because "properly conducted class actions" are a recognized exception to the general rule against non-party preclusion. *Taylor*, 553 U.S. at 894 (citation omitted).

The law of preclusion is, of course, "subject to due process limitations." *Id.* at 891. Accordingly, an absent class member may challenge the binding effect of a class-action judgment on grounds that: (1) he was denied "notice plus an opportunity to be heard and participate in the litigation"; (2) he was denied *"*an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court"; and/or (3) the named plaintiff failed to "adequately represent [his] interests." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985).

Remaining Plaintiffs do not challenge the enforceability of the *Coffey* Judgment on any due-process grounds, and they concede all—or nearly all[8]—of the *res judicata* elements. *See* Resp. Br. (Doc. No. 176) at 8-9. They nonetheless argue that they are not bound by the *Coffey* Judgment: (1) because the filing of this federal lawsuit operated as a

---

[8] Arguably, Remaining Plaintiffs contest the identity-of-the-parties element with respect to Bradley Snow and Keyra Soto.

9

request to be excluded from the *Coffey* Settlement Class; and/or (2) with respect to Mr. Snow and Ms. Soto, because the *Coffey* Judgment's release of claims has no preclusive effect on them as subsequent purchasers of property owned by members of the *Coffey* Settlement Class. The first of these arguments hinges largely on the interpretation of Okla. Stat. tit. 12, § 2023(C)(4), about which the parties disagree. The Court will therefore address the statutory-interpretation issue before evaluating the preclusive effect of the *Coffey* Judgment on the claims of each Remaining Plaintiff.

   A. *Whether Plaintiffs Requested to Opt Out of the Coffey Settlement Class Pursuant to Okla. Stat. tit. 12, § 2023(C)(4)*

Remaining Plaintiffs contend that the filing of this lawsuit on October 30, 2013 operated as a request for exclusion from the *Coffey* Settlement Class. Resp. Br. at 6, 7, 14-15. To support this contention, Remaining Plaintiffs cite Okla. Stat. tit. 12, § 2023(C)(4), which provides, in relevant part:

> Members to whom individual notice is not directed shall be given notice in such manner as the court shall direct . . . provided that the cost of giving such notice shall be reasonable in view of the amounts that may be recovered by the class members who are being notified. <u>Members to whom individual notice was not directed</u> may request exclusion from the class at any time before the issue of liability is determined, and <u>commencing an individual action before the issue of liability is determined shall be the equivalent of requesting exclusion from the class</u>.

*Id.* (emphasis added).

The summary judgment record demonstrates that individual notice was sent to the Arteagas, Keyra Soto, Dennis Carruth (predecessor-in-interest to Bradley Snow with respect to his property at 203 W. Kansas), and Sara Miller (predecessor-in-interest to Keyra Soto with respect to her property at 214 E. Lincoln). *See* Ex. 14 to Reply Br. (Doc. No.

10

180-1) at 5, 14, 83, 100. Thus, Okla. Stat. tit. 12, § 2023(C)(4)'s opt-out provision does not apply to the Arteagas, who acknowledge that they were putative class members and received individual notice of the lawsuit but contend that they took the steps necessary to opt out. *See* Resp. Br. at 9-12.

Bradley Snow and Keyra Soto contend, as to their properties purchased after December 19, 2011, that § 2023(C)(4) applies to them because they did not receive individual notice of the *Coffey* lawsuit. This argument misconstrues the statute: as non-class members—insofar as the properties purchased after December 19, 2011—they could not request to be excluded from the *Coffey* Settlement Class. The determinative question with respect to their claims is whether they are bound by the actions of their predecessors-in-interest, who were class members.

B. *Claims of Bradley Snow and Keyra Soto*

"[N]onparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment."[9] *Taylor*, 553 U.S. at 894 (citation omitted). One such relationship is plainly applicable here: that of "preceding and succeeding owners of property." *Id.* It is undisputed that neither Dennis Carruth (predecessor-in-interest to Mr. Snow with respect

---

[9] In Oklahoma and elsewhere, this exception has been traditionally conceptualized as "privity." *See Taylor*, 553, U.S. at 894 n.8 (observing that "[t]he substantive legal relationships justifying preclusion are sometimes collectively referred to as 'privity'"); *Greco v. Foster,* 268 P.2d 215, 220 (Okla. 1954) (explaining that "[t]he term 'Privity' denotes successive relationship or ownership of the same property from a common source"). "Privity" is a somewhat amorphous concept that has "come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground." *Taylor*, 553, U.S. at 894 n.8 (emphasis added).

11

to his property at 203 W. Kansas), nor Sara Miller (predecessor-in-interest to Ms. Soto with respect to her property at 214 E. Lincoln) requested exclusion—timely or otherwise—from the *Coffey* Settlement Class. *See* Ex. 14 to Reply Br. (Doc. No. 180-1) at 5, 14, 83, 100. Accordingly, these property owners were among those "adjudged to be members of the Settlement Class" and "bound by [the] Final Judgment . . . ." Ex. 4 to Op. Br. (Doc. No. 168-4) at 24.

Mr. Snow and Ms. Soto, as successive owners of the respective properties, are likewise bound by the *Coffey* Judgment." *See, e.g., Hooks v. Rocket Oil Co.*, 1942 OK 324, 191 Okla. 431, 130 P.2d 846, 847 (holding that a real estate owner was bound by an earlier judgment involving the real estate because his "remote grantor" was a party to the action); *Factor Oil Co. v. Brydia*, 1938 OK 356, 184 Okla. 113, 85 P.2d 311, 313 (same).

Remaining Plaintiffs submit that the *Coffey* Judgment operates as a "restrictive covenant . . . run[ning] with the land" and cannot, therefore, bind Mr. Snow or Ms. Soto unless it is shown that they "took ownership of the propert[ies] *with notice*" of it. Resp. Br. at 14. Remaining Plaintiffs' invocation of property law is unavailing in this context. A restrictive covenant is a "private agreement . . . that restricts the use or occupancy of real property." BLACK'S LAW DICTIONARY (10th ed. 2014). Even if the *Coffey* Judgment could be construed as a restriction on the use or occupancy of real property—which it cannot— it has the force and effect of a <u>judgment</u> and, under the exception articulated above for "preceding and succeeding owners of property," is binding as such upon Mr. Snow and Ms. Soto.

C. *Claims of the Arteagas*

In contrast to Mr. Snow and Ms. Soto, the Arteagas did submit a written request for exclusion from the *Coffey* Settlement Class. *See* Ex. 3 to Resp. Br. (Doc. No. 176-3). However, they subsequently submitted a claim form, which was treated as a request to rejoin the Settlement Class under the Last Submission of Intent Rule. *See* Ex. 6 to Op. Br. (Doc. No. 168-6); Ex. 11 to Op. Br. (Doc. No. 168-11) at 5; Ex. 5 to Op. Br. (Doc. No. 168-5) at 2-3. By order dated March 24, 2014, the Arteagas were removed from the Final Opt-Out List, on which their names and properties had mistakenly appeared. *See* Ex. 5 to Op. Br. (Doc. No. 168-5).

Remaining Plaintiffs argue that it is unfair to treat the Arteagas as class members because: (1) they "never intended to rejoin the Coffey Settlement [Class]," having executed the claim forms under the mistaken belief that they were "part of the opt out process"; (2) they "have received no payment . . . in regards to the Settlement"; and (3) they filed this lawsuit during a period in which they were "treated . . . as opt outs" by the Settlement Administrator. Resp. Br. at 5-6. Remaining Plaintiffs' subjective perception of unfairness has no bearing on whether the Arteagas are bound by the *Coffey* Judgment; nor does the Arteagas' subjective intention to exclude themselves from the *Coffey* Settlement Class. As explained above, the Arteagas and their properties were excluded from the Final Opt-Out List adopted by the state court in its August 19, 2013 order. By operation of that order, the Arteagas were adjudicated to be members of the *Coffey* Settlement Class. The propriety of that adjudication is not reviewable by this Court. *See Depuy v. Hoeme*, 1989 OK 42, 775 P.2d 1339, 1344 n. 23.

D. *Estoppel by Laches*

What remains is the argument advanced by Remaining Plaintiffs that Defendants waited too long to raise the affirmative defenses of *res judicata* and/or collateral estoppel. *See* Resp. Br. at 16-17. The Court agrees with Defendants that these affirmative defenses were timely raised in response to the filing of Plaintiffs Complaint. *See* Answer (Doc. No. 10) at 40-41; *see also* Answer to Am. Compl. (Doc. No. 67) at 36.

CONCLUSION

Plaintiffs Bradley Snow and Keyra Soto acquired their properties from individuals who undisputedly had notice of the *Coffey* Litigation and declined to opt out. By declining to opt out, these individuals became members of the *Coffey* Settlement Class and, as a result, were (and are) bound by the *Coffey* Judgment. As succeeding owners, Mr. Snow and Ms. Soto are likewise bound. *See Taylor*, 553 U.S. at 894.

Sergio and Teresa Arteaga—though once treated as opt-outs—were adjudicated by the state court to be members of the *Coffey* Settlement Class when that court granted the Settlement Administrator's motion to remove the Arteagas from the Final Opt-Out List. As such, they are bound by the *Coffey* Judgment as well.

The parties agree that the *Coffey* Judgment otherwise satisfies the elements of *res judicata*. Accordingly, the Court finds there is no dispute as to any material fact, and Defendants are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

IT IS SO ORDERED this 6th day of March, 2019.

_____
CHARLES B. GOODWIN
United States District Judge